ANNA YOME, Respondent, *v.* JOHN B. GORMAN, as Supervisor of Roman Catholic Cemeteries, Diocese of Brooklyn, et al., Appellants.

Injunction — cemeteries — preliminary injunction should not be granted unless rights of parties are clear — action for injunction to restrain interference with removal of bodies from Catholic to non-Catholic cemetery — where on the record conflicting inferences of duty and propriety may be drawn, injunction should not be accorded as matter of right — wishes of wife and next of kin not always supreme — regard must be given to wishes of decedent and rights and feelings of those entitled to be heard by reason of relationship or association.

1. A preliminary injunction restraining a defendant cemetery from interfering with the removal of bodies by the plaintiff, in effect determines the action and leaves nothing to be tried. Such an injunction, if ever permissible in advance of final judgment, is plainly inappropriate unless the undisputed facts are such that a trial is a futility. If there are motives to be probed and opposing equities to be weighed, there must be the searching scrutiny of a trial and the sanction of a judgment.

2. In an action to restrain defendants from interfering with her removal of the bodies of her husband, children, mother and brother from a Roman Catholic cemetery, where they were buried, to a non-Catholic cemetery, resisted by defendants on the ground that disinterment for the purpose of removal to a cemetery of another faith would be an act of desecration, where plaintiff insists that her husband, mother and brother were without devotion to the tenets of the church and that the children were too young to have religious convictions, but defendants, on the other hand, point out that they were reared and died in the Catholic faith, conflicting inferences of duty and propriety may be drawn and a case is not made out where the privilege of removal should be accorded as a matter of right. A preliminary injunction, therefore, should not be granted.

3. The wishes of wife and next of kin are not always supreme and final though the body is yet unburied. Still less are they supreme and final when the body has been laid at rest, and the aid of equity is invoked to disturb the quiet of the grave. There will then be due regard to the interests of the public, the wishes of the decedent, and the rights and feelings of those entitled to be heard by reason of relationship or association. A benevolent discretion, giving heed to

all those promptings and emotions that men and women hold for sacred in the disposition of their dead, must render judgment as it appraises the worth of the competing forces.

*Yome* v. *Gorman,* 213 App. Div. 229, reversed.

(Argued April 6, 1926; decided May 4, 1926.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 5, 1925, which affirmed an order of Special Term granting a motion for a preliminary injunction.

The Appellate Division certified the following questions:

" 1. The Roman Catholic Diocese of Brooklyn, a religious corporation, by written instrument on September 20, 1916, granted to John D. Yome and the plaintiff a qualified right of burial in the cemetery of the Holy Cross, a cemetery owned and operated by it under the rules of the Roman Catholic Church in the Borough of Brooklyn. Said grant is in the following form:

" ' This is to certify that * * * is the proprietor of the right of burial in that certain lot, * * * on a certain map entitled

CEMETERY OF THE HOLY CROSS

* * * subject to the rules and regulations to be made by the Right Reverend Bishop of Brooklyn, relating to said cemetery.

Provided that nothing herein contained shall be construed to grant any other right or privilege whatever than the right of burial therein; and provided further, that the said right shall not extend to the burial of any deceased person who shall have departed this life not in communion with the Catholic Church.'

" John D. Yome, and plaintiff were born Catholics John D. Yome died on February 8, 1925. On February 5, 1925, John D. Yome and plaintiff called to his sick-bed a Catholic priest and had the last rites and sacraments of the Catholic Church administered to him, and had

1926.] Statement of case. [242 N. Y. 395]

said priest make two other visits to him before he died for the purpose of complying with the conditions of said grant and enabling his body to be buried in the Holy Cross Cemetery. Plaintiff caused a public funeral Mass to be held for John D. Yome in a church, and caused his body to be buried in the Holy Cross Cemetery on February 11, 1925.

" Thirty years prior to the purchase of said lot by John D. Yome, he caused the deceased infant, seventeen months old of himself and plaintiff to be buried in said cemetery. Again twenty-seven years prior to the purchase of said lot, he caused another deceased infant of himself and plaintiff, two years and nine months old, to be buried in said cemetery. Each of said infants were buried in single graves. About one year after the purchase of said lot, said John D. Yome caused the body of his deceased mother-in-law to be buried therein. About three years after the purchase of said lot, said John D. Yome caused the body of his wife's brother Louis Raphanel to be buried therein. Besides the plaintiff, his widow, John D. Yome is survived by two adult daughters and one adult son.

" There have been at all times mentioned herein, and still are, rules of the Bishop of Brooklyn, relating to the Holy Cross Cemetery providing that no deceased body which has been buried in said consecrated cemetery shall be disinterred for the purpose of reburial in a non-Catholic cemetery. The plaintiff wishes to disinter the body of John D. Yome and the said other bodies for the purpose of having them reburied in a non-Catholic Cemetery. Is the plaintiff entitled to an injunction restraining the defendants from interfering with the disinterment of said bodies for said purpose?

" 2. Where a husband and wife have purchased from a religious corporation a right of burial in a cemetery owned and operated by said religious corporation, and the instrument granting said right provides that it grants the

right of burial only and no other right, and that the right of burial is subject to the rules and regulations referring to said cemetery made by the chief officer of said church corporation; and where there have at all times existed rules made by said chief officer preventing the burial in said cemetery of the bodies of persons who have died not in communion with said church, and preventing the removal of bodies of persons who have been buried in said cemetery for the purpose of reburying them in any other cemetery not connected with said church and where said husband has caused to be buried in said lot and under said rules certain deceased members of his family, and where said husband shortly before his death with the consent and procurement of said wife receives the communion of said church for the purpose of enabling his body to be buried in said cemetery, and where said husband dies and said wife (now widow), causes his funeral to be held by the representatives of said church for the purpose of having his body buried in said cemetery, and where the widow causes his body to be buried in said cemetery under said rules and regulations, has said widow, with the consent of the surviving children of said husband the right thereafter to remove the body of said deceased husband for burial in another cemetery not connected with said church?

" 3. Where the body of a deceased husband has been buried by his widow in a cemetery under a contract by which it was not to be removed from said cemetery except under the rules of the chief officer of a religious corporation which owned and operated said cemetery, has the widow of said deceased husband, with the consent of his surviving children, the right to remove the body of said deceased husband from said cemetery against the rules made by the chief officer of said religious corporation relating to removal of bodies from said cemetery?

" 4. Is the plaintiff herein entitled to a preliminary injunction restraining the defendants from interfering

with her removal of the body of John D. Yome and the other bodies involved with Holy Cross Cemetery? "

*John J. Curtin* and *Wesley S. Sawyer* for appellants. Disturbing the remains of the dead, considered abstractly, being a work of desecration, an application to disinter the body of a deceased person should not be granted by the court without the gravest reasons. (*Matter of Berezoff*, 166 App. Div. 903; *Matter of Ackerman*, 124 App. Div. 684; *Schroeder* v. *Wanzor*, 36 Hun, 423; *Snyder* v. *Snyder*, 60 How. Pr. 368; *Matter of Donn*, 14 N. Y. Supp. 189; *Thompson* v. *Hickey*, 8 Abb. N. C. 159; *Secor* v. *Secor*, 18 Abb. N. C. 78; *Matter of Owen*, 79 App. Div. 236; *Matter of Bleistift*, 193 App. Div. 477.) The bodies of John D. Yome and others were buried in Holy Cross Cemetery under a contract that such burial was subject to the rules and regulations of the Bishop of Brooklyn, including the rule and regulation that bodies buried in said cemetery should not be disinterred for the purpose of reburial in a non-Catholic cemetery. (*Hodge* v. *Sloan*, 107 N. Y. 250.) Where a deceased person is buried under a contract imposing conditions on the removal of the body, the contract is valid and enforcible. (*Cohen* v. *Congregation Shearith Israel*, 114 App. Div. 117.)

*Henry Waldman* for respondent. While the form of this proceeding is for both temporary and permanent injunction, its real purpose is to obtain the possession of the bodies of the deceased persons. Such is the proper remedy. (*Cohen* v. *Cong. Shearith Israel*, 114 App. Div. 117; 189 N. Y. 528; *Matter of Owens*, 79 App. Div. 236; *Finley* v. *Atlantic Transport Co.*, 220 N. Y. 249; *Danahy* v. *Kellof*, 70 Misc. Rep. 25; *Maloney* v. *Katzenstein*, 135 App. Div. 224; *Bronk* v. *Riley*, 50 Hun, 489; *West Side El. Co.* v. *Consolidated Subway Co.*, 87 App. Div. 550.) All of the persons who have any rights with respect to the disposition of the deceased bodies in question have unqualifiedly consented to the disinterment of said

bodies. (*Hasselbach* v. *Mt. Sinai Hospital*, 173 App. Div. 89; *Matter of Richardson*, 29 Misc. Rep. 367.) The fact that disinterment of a body is contrary to the rules or laws of a religious denomination is no reason for denying the right of removal. (*Cohen* v. *Cong. Shearith Israel*, 114 App. Div. 117; 189 N. Y. 528; *Matter of Bauer*, 68 App. Div. 212.)

Cardozo, J. The controversy has its origin in an attempted disinterment of the bodies of the dead.

John D. Yome and the plaintiff, Anna Yome, his wife, bought an eight-grave plot in Holy Cross Cemetery, Brooklyn. They had buried two infant children in the same cemetery many years before. The approach of old age seems to have warned them of the need of providing a resting place for themselves and for others who were close to them. There is a statement by the plaintiff that the plot was taken with the thought of supplying a place of merely temporary burial. Its size, however, the number of its graves, and the use thereafter made of it, suggest a purpose more enduring. Holy Cross Cemetery is maintained by the Roman Catholic Diocese of Brooklyn. Burial within the cemetery is a privilege reserved to those who have died in communion with the Roman Catholic Church. The certificate of ownership delivered to the purchasers of plots expressly so provides, and provides also that the right of burial shall be subject to the rules and regulations of the Bishop of the Diocese. In the faith of the Church, plaintiff's mother and brother were buried in the plot so purchased. This was done some years ago while Mr. Yome was yet alive. The end came for him in February, 1925. On his deathbed he received the sacraments of his church, and he was laid in his grave in accordance with its rites. A rule of the Church forbids the removal of a body from consecrated ground to ground that is unconsecrated, or consecrated to another faith.

There was swiftly a change of heart. Plaintiff, though baptized a Roman Catholic, became the owner of a plot in a non-Catholic cemetery, where it is now her purpose to be buried. She made demand upon the defendants, the Roman Catholic Diocese and the Supervisor of Cemeteries, for permission to remove the bodies. They refused to yield to the demand on the ground that disinterment for the purpose of removal to a cemetery of another faith would be an act of desecration. Plaintiff, seeking to justify her position, insists that her husband was without devotion to the tenets of the Church, and did not care where he was buried if only he was close to her. Defendants remind us on the other hand that he was reared in the faith of the Church, and died in it, sending for a priest upon his deathbed to gain the privilege of burial in consecrated ground. What the plaintiff says of her husband, she says in substance also of her mother and her brother. The infant children, buried long before, were too young to have religious convictions or wishes of their own. The surviving next of kin support the plaintiff in her request that the bodies be removed.

This action is brought to restrain the defendants from preventing the removal. A temporary injunction to that effect was granted at Special Term. The Appellate Division, affirming the injunction order, has certified an appeal to us. The questions framed are not free from ambiguity. We interpret them as propounding the inquiry whether the privilege of removal is to be accorded as a matter of right (*Matter of Davies*, 168 N. Y. 89; *Matter of People* [*City Equitable Fire Ins. Co.*], 238 N. Y. 147, 155). If less than this was meant, an injunction so drastic would not have issued in advance of judgment. The order restrains the defendants from interfering with the removal of the bodies by the plaintiff during the pendency of the action. If it stands, there will be nothing left to try, for the bodies will be removed before the cause is brought to hearing. Such an injunction, if ever per-

missible in advance of final judgment, is plainly inappropriate unless the undisputed facts are such that a trial is a futility (*Bachman* v. *Harrington*, 184 N. Y. 458). If there are motives to be probed and opposing equities to be weighed, there must be the searching scrutiny of a trial and the sanction of a judgment.

Upon the record before us, one may draw conflicting inferences of duty and propriety. The wishes of wife and next of kin are not always supreme and final though the body is yet unburied (*Pettigrew* v. *Pettigrew*, 207 Penn. St. 313, 319). Still less are they supreme and final when the body has been laid at rest, and the aid of equity is invoked to disturb the quiet of the grave (*Matter of Ackermann*, 124 App. Div. 684, 685; *Weld* v. *Walker*, 130 Mass. 422, 424; *Pettigrew* v. *Pettigrew*, *supra;* *Wilson* v. *Read*, 74 N. H. 322, 325; *Toppin* v. *Moriarty*, 59 N. J. Eq. 115, 118; *Polish Nat. Church* v. *Soklowski*, 159 Minn. 331; *Pulsifer* v. *Douglass*, 94 Me. 556). There will then be " due regard to the interests of the public, the wishes of the decedent, and the rights and feelings of those entitled to be heard by reason of relationship or association " (*Pettigrew* v. *Pettigrew*, *supra*). A benevolent discretion, giving heed to all those promptings and emotions that men and women hold for sacred in the disposition of their dead, must render judgment as it appraises the worth of the competing forces (*Cohen* v. *Congregation Shearith Israel*, 114 App. Div. 117; 189 N. Y. 528; *Matter of Bauer*, 68 App. Div. 212; *Snyder* v. *Snyder*, 60 How. Pr. 368).

To the making of that appraisal, many factors will contribute. One may not fix their values in advance, for in so doing one would overlook the varying force of circumstance. One can do little more than offer the suggestion of example. The wish of the deceased, even though legal compulsion may not attach to it (*Williams* v. *Williams*, L. R. 20 Ch. Div. 659), has at least a large significance (*Pettigrew* v. *Pettigrew*, *supra*, at p. 317;

*Pierce* v. *Swan Point Cemetery,* 10 R. I. 227, 239, 242; *Gardner* v. *Swan Point Cemetery,* 20 R. I. 646, 649; *Wilson* v. *Read, supra*). Especially is this so when the wish has its origin in intense religious feeling (*Matter of Donn,* 14 N. Y. Supp. 189; approved in *Matter of Ackermann, supra*). Only some rare emergency could move a court of equity to take a body from its grave ·in consecrated ground and put it in ground unhallowed if there was good reason to suppose that the conscience of the deceased, were he alive, would be outraged by the change. Subordinate in importance, and yet at times not wholly to be disregarded, are the sentiments and usages of the religious body which confers the right of burial. We do not interpret the terms of this certificate of purchase as importing a contract between the cemetery and the owners of the plot that there shall be no disinterment at any time if forbidden by the tenets of the Church or the orders of the Bishop. How far such a contract, if made, would call for enforcement by injunction, there is no occasion to determine (*Cohen* v. *Congregation, etc., supra*). Even without contract, sentiments and usages, devoutly held as sacred, may not be flouted for caprice. They must be weighed in the balance with the motives and feelings that sway the acts of the survivors. Removal at the instance of a wife or of kinsmen near in blood to satisfy a longing that those united during life shall not be divided after death, may seem praiseworthy and decorous when removal at the instance of distant relatives or strangers would be arbitrary or cruel. The dead are to rest where they have been laid unless reason of substance is brought forward for disturbing their repose (*Matter of Ackermann, supra; Polish N. Church* v. *Soklowski, supra*).

We have sought, not to declare a rule, but to exemplify a process. The considerations we have instanced and others of like order may move a court of equity to keep a grave inviolate against the will of the survivors. They are none of them so absolute, however, that they may

not be neutralized by others. The wish expressed during life may have been declared casually or lightly. The bond of religion may have been weak, and the bond of marriage or of kinship may have been strong. Separation after death from the resting place of wife or child may have seemed an evil more poignant than separation after death from the faithful of the church. We are told by Mrs. Yome that so her husband would have felt. Her statement does not control us. To some extent, though not at all conclusively, it is contradicted by his acts. The trier of the facts must probe his state of mind. With this, when it is ascertained and the intensity of his feelings measured, must be compared the sentiments and wishes of wife and kin surviving. A like process must be followed before the other graves may be disturbed. Right must then be done as right would be conceived of by men of character and feeling.

The order of the Appellate Division and that of the Special Term should be reversed without costs; the first, second and third questions are not answered since they contain recitals that are inappropriate and to some extent erroneous; and the fourth question, which is construed as an inquiry whether a case for an injunction has been made out as a matter of right upon uncontroverted facts, is answered in the negative.

CRANE, J. I concur. I see no reason why interment may not be a matter of contract. If so, I am of the opinion that a contract was made here which prevents removal contrary to the rules of the Church.

HISCOCK, Ch. J., POUND, McLAUGHLIN and LEHMAN, JJ., concur; CRANE, J., concurs for reasons stated in opinion and also on ground stated in separate memorandum; ANDREWS, J., not voting.

Orders reversed, etc.