William Lyman, J.
Petitioner seeks to remove the body of her stepmother from the same grave in which her father is interred in Woodlawn Cemetery, and to have the remains placed in another lot in the same or a different cemetery.
The grave is one of 10 in a lot acquired by petitioner’s father, Jacob Froehlich, in 1916. During his lifetime, his first wife and one son were buried in the lot. On his death in 1952, he left ¡surviving his second wife, Mary Louise E. McKnight Froehlich and two children by his first marriage. He was buried in one of the graves in the lot. His second wife died in 1962 and she was interred in the same grave as her deceased husband. In 1954 she had filed an affidavit with the cemetery corporation attesting that she was the widow of Jacob Froehlich, and in 1962 the executrix of her estate executed authorization to inter her remains in the lot formerly owned by her husband.
As his surviving spouse, the second wife of Jacob Froehlich had the right of interment in the lot he owned at the time of his death provided that all of the burial space had not been designated by him for the interment of others (Membership Corporations Law, § 84, subd. 7) and the designation was executed, acknowledged and filed in accordance with statutory requirements (idem, subd. 9).
In support of her contention that such designation had been made by her father, petitioner produced a written diagram drawn and signed by him in 1950 in which he depicted the lot *1027 subdivided into 10 graves. The name of the individual he wished to be interred therein was written on each of the graves. He had also written on the paper a statement that he did not wish two persons to be buried in any one of the first 5 graves. Over one year and one half after his death the petitioner’s attorneys attempted to file this instrument with the cemetery corporation as a designation. Accompanying it was an affidavit of an attorney Mr. Louis F. Stumpf stating he knew Jacob Froehlich for 35 years before his death, that he was acquainted with the deceased’s handwriting and signature, that the deceased told him that he had prepared the document and that he (the affiant) believed it to be written and signed by Jacob Froehlich.
It is clear from a reading of subdivision 9 of the Membership Corporations Law that the diagram was not acknowledged and filed within the meaning of the statute. The statute provides that ‘ ‘ At any time all the owners of a lot, and any surviving spouse having a right of interment therein, may execute, acknowledge and file with the corporation an instrument, and the sole owner of a lot may, in a testamentary instrument admitted to probate, make a provision, which may (a) designate the person or persons or class of persons who may thereafter be interred in said lot or in a tomb in such lot and the places of their interment ”.
The only meaning that can be attributed to this subdivision of section 84 is that the designation is made by an instrument which must be executed, acknowledged and filed by the owner of a lot during his lifetime, or by will. For the protection of the surviving spouse, the authenticity of the document should be confirmed by an acknowledgment to one who is a witness to its execution and by the owner himself filing it. The affidavit of Mr. Stumpf did not state that he was present when the diagram was executed or that Jacob Froehlich acknowledged to him that he (Jacob Froehlich) executed and signed it. Identification of the handwriting and signature by the affiant was not an acknowledgment by the owner required by the statute. Moreover, an affidavit made one and one-half years after the owner’s death cannot be substituted for such acknowledgment.
However, even assuming that the execution, acknowledgment and filing of the document were made in conformity with subdivision 9 and the designation was valid, nevertheless, the widow of Jacob Froehlich had the right to be interred in the lot if burial space was available. The statute (subd. 7) confers on the owner the power to control the number of persons he wishes to be interred in the lot. It is only when each grave in the lot is used to its full capacity that his widow may be excluded, for *1028 it is only then that burial space is unavailable. Otherwise, her remains may be placed in any grave where space is available. The statute does not limit the number of persons to be buried in a grave, but refers to “ all the available burial spaces in a lot.” Therefore, in the exercise of a widow’s right of interment, the second wife of Jacob Froehlich was entitled to be buried in the grave in which his body was interred. The fact that he had expressed the desire that not more than one should be placed in the first five graves was subordinate to the paramount right of his widow to be buried wherever space was available in the lot.
The contention of the petitioner that under section 84 (subd. 7, par. [b]) the widow forfeited her right of interment in view of her separation from her husband for about one year before his death is without merit. The section applies only when the spouse owning the lot files with the cemetery corporation a written objection to the interment of the other spouse at least 30 days before the other’s death. No such objection was filed at any time by Jacob Froehlich.
In her will, Mary Louise E. Froehlich expressed the desire to be buried in the “ Froehlich plot at Woodlawn Cemetery ”. Her wish together with her right to be buried there are predominant factors to be considered in a proceeding to disinter her remains. She had the right not only to be interred in her deceased husband’s grave but to be permanently interred therein. As the court said in Matter of Currier (Woodlawn Cemetery) (300 N. Y. 162,164): “ The quiet of the grave, the repose of the dead, are not lightly to be disturbed. Good and substantial reasons must be shown before disinterment is to be sanctioned. (See Yome v. Gorman, 242 N. Y. 395, 403; Matter of Ackermann, 124 App. Div. 684, 685.) While the disposition of each case is dependent upon its own peculiar facts and circumstances and while no all-inclusive rule is possible, the courts, exercising a ‘ benevolent discretion ’, will be sensitive ‘ to all those promptings and emotions that men and women hold for sacred in the disposition of their dead ’. (Yome v. Gorman, supra, 242 N. Y., at p. 402.) And looming large among the factors to be weighed are the wishes of the decedent himself.”
In the present instance, “ good and substantial reasons ” have not been shown by the heirs at law of Jacob Froehlich for the disinterment of the body of his widow. The application is denied and the petition is dismissed.