J. Irwin Shapiro, J.
This is an application for an order “ allowing, permitting and directing that the bodies of Rose Brand, and the petitioner’s daughter, Regina Brand Fayne, be disinterred from the graves in which they are now buried in Plot 6, in Mount Zion Cemetery * * *, and allowing, directing and permitting the removal of said bodies to other graves in said Plot 6 in the aforenamed cemetery ”,
Elmwier Cemetery Association, Inc., the owner and operator of Mount Zion Cemetery (hereinafter “Cemetery”) opposes the application on the ground that “It is manifestly shocking to every sense of decency and morality that complete strangers should now come before this Court in an attempt to disturb ” Rose Brand’s “final resting place”. There is no other opposition to petitioner’s application.
Petitioner is the widow of Herman Brand, who died in 1937 and was interred in a 12-grave plot designated Plot 6 of the burial grounds maintained by respondent Daniel Webster Benevolent Association, Inc. (hereinafter “ Benevolent Association”). Herman Brand apparently had burial rights in said 12-grave plot by virtue of membership in the Benevolent Association. Prior to his marriage to petitioner, Herman Brand was married to Rose Brand. She died in 1910 and was the first one to be buried in a grave in Plot 6. Regina Brand Fayne, a daughter of petitioner and said Herman Brand (a stranger to Rose Brand, as is petitioner), died in January, 1968. She was also buried in a grave in that plot.
Petitioner’s allegation that she owns the plot by virtue of her membership in the Benevolent Association is denied by the Cemetery, which alleges affirmatively that its books and records indicate that the plot and the 12 graves it contains are owned by the Benevolent Association.
According to a diagram attached to the petition, Plot 6 consists of two parallel vertical rows, each row containing six graves side by side. The diagram also shows that Rose Brand is interred in the third grave from the bottom of the right row; that Herman Brand is interred in the fifth grave from the bottom of that same row, thus leaving an unoccupied grave between that grave and Rose’s grave; and that Regina is buried in the fifth grave from the bottom in the opposite, or left, row. It is also noted on the diagram that petitioner has reserved for herself the top grave of the right row, the grave immediately above that of Herman Brand.
Another diagram showing the disinterments and reinterments sought by this application is attached to the petition. According *410 to that diagram, petitioner seeks to have the remains of Rose Brand exhumed and transferred to the first grave in the right row and have Regina’s remains exhumed from the left row and transferred to the fourth grave from the bottom of the right row, so that the top three graves in that row will be occupied by petitioner? her late husband and her daughter Regina, with two unoccupied graves (one being the grave from which Rose’s remains were taken) between those three graves and the new grave of Rose Brand at the bottom of the row.
Petitioner alleges that her daughter was not interred in the grave to which it is now sought to have her remains transferred (between the graves of Herman and Rose) —which burial would have carried out petitioner’s present scheme of having the graves of her late husband, her daughter and hers side by side in a row — because it was found on her daughter’s death that, by reason of the “ increase through the years in the size of caskets, * * * the contemplated site for her casket between her father and rose brand was too small.” By its answer, the Cemetery denied that it has any knowledge or information sufficient to form a belief as to this allegation and further alleges, in contending that good and substantial reasons have not been presented to permit disturbing Rose Brand’s grave, that when petitioner’s daughter died on January 13,1968 “ there was ample room for the interment of [petitioner’s daughter] in the other vacant grave adjacent to that of Herman A. Brand. ’ ’
Section 89 of the Membership Corporations Law governs the removal of a body interred in a cemetery. It readsA body interred in a lot in a cemetery owned or operated by a corporation incorporated by or under a general or special law may be removed therefrom, with the consent of the corporation, and the written consent of the owners of the lot, and of the surviving wife, husband, children, if of full age, and parents of the deceased. If the consent of any such person or of the corporation can not be obtained permission by the county court of the county, or by the supreme court in the district, where the cemetery is situated, shall be sufficient. Notice of application for such permission must be given, at least eight days prior thereto, personally, or, at least sixteen days prior .thereto, by mail, to the corporation or to the persons not consenting, and to every other person or corporation on whom service of notice may be required by the court.” The 'Cemetery having refused to consent to the removal of Rose Brand’s remains from one grave to another in the same plot in the manner above indicated, an order of this court is sought to authorize their removal.
*411 Though resting greatly in the exercise of discretion, courts are guided persuasively in applications of this kind by adjudicated criteria. As a forceful generalization, it was said in Matter of Fromm (280 App. Div. 1022) that it is the rule “ that when interment has actually been made, disinterment is usually not allowed unless supported by a strong case.” More specifically, it was said in Matter of Currier (300 N. Y. 162, 164): “ The quiet of the grave, the repose of the dead, are not lightly to be disturbed. Good and substantial reasons must be shown before disinterment is to be sanctioned. (See Yome v. Gorman, 242 N. Y. 395, 403; Matter of Ackermann, 124 App. Div. 684, 685.) While the disposition of each case is dependent upon its own peculiar facts and circumstances and while no all-inclusive rule is possible, the courts, exercising a ‘ benevolent discretion ’, will be sensitive ‘ to all those promptings and emotions that men and women hold for sacred in the disposition of their dead ’. (Yome v. Gorman, supra, 242 N. Y., at p. 402.) And looming large among the factors to be weighed are the wishes of the decedent himself ”.
A widow has high priority in selecting the place and manner of her deceased spouse’s burial (Matter of Fromm, supra), “but the widow’s desire is not always determinative, particularly where the body has already been laid to rest. ’ ’ (Matter of McEvilly, 54 Misc 2d 602, 603.) Where the applicant for the removal of a body is a stranger to the deceased, the desire of the stranger is even less determinative and permission to remove is particularly circumscribed in such case. In Yome v. Gorman (242 N. Y. 395, supra), the late revered Judge Cabdozo, in his characteristic trenchant and lucid style, said (p. 403): “ Removal at the instance of a wife or of kinsmen near in blood to satisfy a longing that those united during life shall not be divided after death, may seem praiseworthy and decorous when removal at the instance of distant relatives or strangers would be arbitrary or cruel. The dead are to rest where they have been laid unless reason of substance is brought forward for disturbing their repose [citing cases] ”.
This application presents a novel question. Almost all reported cases where permission was granted to remove a body involved applications by members of the family of the deceased and sought to remove the deceased from a grave furnished by a benevolent or burial association (Matter of Bobrowsky, 266 App. Div. 849; Matter of Schechter, 261 App. Div. 926; Matter of Davis Congregation Radishkowitz, 21 Misc 2d 825; Matter of Dickstein, 188 Misc. 642; Raisler v. Krakauer Simon Schreiber Congregation, 47 N. Y. S. 2d 938) or from a plot owned by a *412 member of the family (Matter of Teitman v. Elmwier Cemetery Assn., 3 Misc 2d 143) to an after-acquired family plot so that all members of the family could be interred in one plot. This case does not fall into any of these categories.
Here the applicant seeking the removal of Rose Brand’s remains is a stranger to Rose Brand. There is nobody to speak for Rose Brand, except the now silent voice of Herman Brand, whose wish and desire it must have been that the final resting place of Rose be the grave in which she was buried, since he did nothing in his lifetime to change it. (Cf. Matter of Von Gross, 56 Misc 2d 275, 278.) This clear (though now voiceless) expression of Herman Brand’s wish is not overriden by petitioner ’s declaration that being buried in the same plot with her husband and daughter and close to one another is not being together in death; that only the three graves being side by side (with Rose’s former grave unoccupied on one side) will suffice for that purpose.
A persuasive guide is furnished by Matter of Von Gross (supra). Frank Gross, who was deceased at the time of the application, was the original owner of an eight-grave cemetery plot in which, prior to his death, the body of a friend, Mabel Geddes, was interred at his direction. Thereafter five members of the Gross family were buried therein, leaving only two graves in the plot at the time of the application. Gross’ widow and two children, expressing their desire to be buried in the family plot, petitioned the court for the right to disinter Mabel Geddes and reinter her in another suitable site in the same cemetery. The application was denied, the court stating (p. 278): “ Much as it is to be desired that the wishes of this family to be buried together be carried out, I am constrained by custom and the declared policies of our courts to refrain from frustrating the wishes of the decedent by disturbing the remains of his friend.”
Good and substantial reasons have not been presented to warrant permission of the court to disturb the grave of Rose Brand. Application denied.