Arnold L. Fein, J.
This is an application, by order to show cause dated February 18, 1976, returnable February 20, 1976 for a temporary injunction enjoining and restraining defendants from directly or indirectly effectuating a merger between defendant Cerro Corporation (Cerro) a New York corporation and defendant Cerro-Marmon Corporation (Cerro-Marmon) a Delaware corporation, pursuant to a Cerro proxy statement dated January 26, 1976, and from doing any act in aid or furtherance of the merger and from holding any stockholders’ meetings relating to the merger including the special meeting to approve such merger noticed for February 24, 1976.
Plaintiffs, two of approximately 25,000 shareholders of Cerro, bring this action on behalf of themselves and other shareholders of Cerro similarly situated for a permanent injunction enjoining such merger and for related relief.
*294 Defendant, The Marmon Group, Inc. (Michigan), (Marmon), a Delaware corporation, is a wholly owned subsidiary of G. L. Corporation (GL), a Delaware corporation, all of the stock of which is owned by defendants Jay A. Pritzker (Jay), Robert A. Pritzker (Robert) and their families. Jay is chairman of the boards of Cerro, Marmon and GL. Robert is president and a director of Cerro, Marmon and GL. The other individual defendants are directors of Cerro. Defendant Cerro-Marmon Corporation (Cerro-Marmon) is a Delaware corporation. Cerro has outstanding approximately 8,000,000 shares of common stock. In early 1974, GL acquired 813,000 shares of Cerro common stock in private and open market purchases. In mid-1974, pursuant to a tender offer to purchase 1,500,000 shares of Cerro common stock at $19 per share, GL purchased 2,773,197 shares of Cerro stock from public stockholders. It then transferred to Marmon all of its holdings of Cerro common stock, totalling 3,586,297 shares, amounting to 45% of all outstanding Cerro common stock. The remaining 55% of Cerro common stock is held by public stockholders including plaintiffs. The purchase of the Cerro stock by GL was financed by borrowings of approximately $68,000,000.
As of January 15, 1976, Cerro, Marmon, Cerro-Marmon and GL entered into an exchange agreement and Cerro-Marmon and Cerro entered into an agreement and plan of merger. These agreements in material part provide for a merger of Cerro into Cerro-Marmon upon the following basis: (1) GL, wholly owned by the Pritzkers, will exchange all of the capital stock of Marmon for all of the common stock of Cerro-Marmon, having 82% of the voting rights; (2) Marmon, which owns 45% of the outstanding common stock of Cerro, will thus become a wholly owned subsidiary of Cerro-Marmon and the Pritzkers will control Cerro-Marmon; (3) The holders of the remaining 55% of Cerro common stock, being the public stockholders, including plaintiffs, will receive in exchange for each share of common stock held by them one share of Cerro-Marmon $1 par value preferred stock, designated as $2.25 Cumulative Series A Preferred Stock, with an annual dividend preference of $2.25 per share and a redemption price and liquidation preference of $22 per share, subject to redemption over 14 years commencing in April, 1981 from sinking fund payments, subject to restrictions now in force or to which Cerro-Marmon may become subject from time to time. Such preferred shares will have 18% of the voting rights of Cerro-
*295 Marmon, although they will not be entitled to a continuing participation in any possible growth in Cerro-Marmon’s earnings or financial well-being, its so-called "residual equity”.
Plainly, the arrangement, if approved, will give the Pritzkers control of Cerro-Marmon and all the benefits of its "residual equity”.
The proposed transaction is described in careful detail in Cerro’s prospectus and proxy statement, dated January 26, 1976, part of the notice of special meeting of Cerro stockholders called for February 24, 1976 to consider the merger.
It is undisputed that defendants have meticulously complied with the applicable statutory requirements of New York and Delaware. (New York Business Corporation Law, § 901, et seq.). Section 903 of the Business Corporation Law, applicable to mergers, requires approval by a vote of % of all outstanding shares entitled to vote thereon. The Pritzkers have caused Marmon to agree to be present at the Cerro stockholders’ meeting for quorum purposes but to vote its shares of Cerro common stock for the merger only if a majority of Cerro’s publicly held shares of common stock voting on the merger vote in favor of it. Thus the Pritzkers will partly control the issue as to whether there is to be a merger, which they favor and from which they will reap a substantial benefit.
Does this fact entitle plaintiffs to a temporary injunction, which may be granted only if they have demonstrated a clear legal right to such relief upon undisputed facts, particularly where the relief sought will give them precisely the same relief they might ultimately be granted after a trial? (Yome v Gorman, 242 NY 395; Rohauer v Killiam, 37 AD2d 547; Park Terrace Caterers v McDonough, 9 AD2d 113; Xerox Corp. v Neises, 31 AD2d 195; Matter of Prestí v New York Racing Assn., 46 AD2d 387).
In essence plaintiffs’ position is that they are entitled to injunctive relief because the facts demonstrate they and other stockholders similarly situated will receive a lesser benefit or sustain a loss due to the merger and the Pritzkers will sustain a substantial benefit therefrom. Until very recently the law has been well settled, particularly in New York, that appraisal and payment is the exclusive remedy of dissenting minority shareholders in a merger, even where there is a "freeze out”. (Matter of Endicott Johnson Corp. v Bade, 37 NY2d 585; Beloff v Consolidated Edison Co. of N. Y., 300 NY2d 11; Anderson v International Mins. & Chem. Corp., 295 NY *296 343.) However, there is recent authority indicating the emergence of a different rule, at least in cases where there is no clear showing of a proper corporate purpose. In People v Concord Fabrics (83 Misc 2d 120, affd 50 AD2d 787), a merger was enjoined in a proceeding brought by the Attorney-General under the Martin Act, (General Business Law, art 23-A; § 352).
Concord Fabrics is unlike our case. There was concededly no corporate purpose other than the elimination of minority shareholders under exceedingly unfair terms amounting to a fraudulent practice. Concord was a private company until 1968 when it sold 300,000 common shares at $15 per share. In 1969, the controlling family sold 200,000 shares in a public offering at $20 per share. Listed on the American Stock Exchange, the stock reached a high of $25 per share in 1969. It fell to $1 in 1974, when the original control group, owning 68% of the stock, formed a private corporation to which they transferred their Concord stock. The court enjoined the pro-' posed cash merger agreement • which was premised on $3 per share to the public shareholders, who had no say in negotiating the merger agreement or its terms and no power to defeat the merger by vote. In essence, premised on the opinion of an investment banker of dubious independence, the insiders were forcing a private price of 85% below the price at which they had sold stock to the public six years earlier. Moreover, the merger had no other purpose than to give the insiders 100% control of a private corporation constituting the same business enterprise as existed prior to the merger. The Second Circuit has just held the same "merger” fraudulent and in violation of subdivision (b) of section 10 of the Securities Exchange Act of 1934 (US Code, tit 15, § 78j, subd [b]) and Rule 106-5 of the Securities and Exchange Commission. (Marshel v A F W Fabric Corp., 398 F Supp 734.) There was palpably no corporate purpose and the entire history of the sale of the corporate securities smacked of fraud.
The absence of corporate purpose is manifest in all the other cases relied on by plaintiffs. In Jutkowitz v Bourns (Cal Super Ct, Los Angeles County, Nov 19, 1975), the opinion states: "Defendants explicitly state that the forced buy-out of the minority shareholders is the only purpose of the whole transaction”. Similar are Bryan v Brock & Blevins Co. (490 F2d 563, cert den 419 US 844), Albright v Bergendahl (391 F Supp 754) and Berkowitz v Power Mate Corp. (135 NJ Super *297 36). Moreover in Berkowitz, there was evidence of insider self dealing, reducing per share earnings so that the very low merger price appeared attractive.
Equally inapposite is Green v Sanie Fe Ind. (533 F2d 1283) where the extended opinion noted: (1) there was no corporate purpose other than to eliminate a 5% minority interest; (2) the price offered was $150 as against an apparent $772 value; (3) the surviving corporation was exactly the same as it had been before the merger; (4) the Delaware short form merger statute precluded advance notice of the merger, afforded no opportunity to vote on it and did not provide for injunctive relief in the State courts. The Second Circuit, over a sharp dissent, proceeded to enjoin the merger under rule 10b-5 of the Securities and Exchange Commission and passed on no questions of State law applicable here.
As these and other cases hold, there is no violation of the fiduciary duty owed by the dominant stockholders to the public stockholders if there is a proper corporate purpose for the merger and there has been neither fraud, self-dealing nor price manipulation and the alternatives afforded to the public shareholders are a fair price fairly determined or the statutory right to an appraisal. This is particularly so where, as here, the public shareholders can control the issue by voting the merger down. There is no authority for the proposition, apparently contended for by plaintiffs, that no merger of a less than wholly owned subsidiary into its parent can occur, however advantageous to the public shareholders, unless all the public shareholders concur.
The complaint in paragraphs "Forty-Ninth” and "Fiftieth” practically concedes the corporate purposes, set out at pages iii and 4 of the proxy statement and prospectus: "(a) to further combine the management and other resources of Cerro and Marmon, thereby allowing inter-company transactions between Cerro and Marmon which could be beneficial to both but which are presently restricted because of possible conflicts of interests and (b) to consolidate Cerro-Marmon and Marmon for financial reporting purposes and consolidate Cerro-Marmon with GL for tax purposes.”
It is undisputed that Cerro and Marmon are engaged in related businesses of a substantial character so that combining their management and other resources and providing for inter-company transactions may well benefit both. These ap *298 pear to be proper corporate business purposes warranting merger. That they will also benefit GL and the Pritzkers is not a ground for enjoining the merger. Nor, in the light of these purposes, is the merger to be enjoined because the public shareholders will not share in future profits if the merger is approved. This is the usual result of such a merger.
Plaintiffs appear to question the procedures by which the merger agreement was worked out and the conclusions of those who participated in the decision and also the means by which the Cerro stock was acquired by GL. Although these allegations appear to be without merit, at best for plaintiffs they would raise triable issues precluding a temporary injunction. Smith, Barney & Co., Incorporated, was retained by Cerro to render an opinion whether Cerro’s public stockholders were to receive a fair price. That apparently independent opinion as to price was less than the price set by Cerro as the merger price. If plaintiffs have a basis for a better price that is a subject for trial not for a temporary injunction. The terms of the merger were worked out and the negotiations leading to it were conducted by an apparently independent committee, two of whom own or represent substantial blocks of Cerro stock. There is no showing of overreaching. GL and Marmon acquired the bulk of the Cerro shares now held by them by open cash tender offers which were oversubscribed, not by any devious means.
In most respects, the relevant facts are remarkably close to those in Grimes v Donaldson, Lufkin & Jenrette, Inc. (392 F Supp 1393), where the merger was found to have valid business reasons.
In the light of the valid business reasons for the merger, no basis for an injunction is to be found in the fact that Cerro is bearing the $1,500,000 cost of legal, accounting and printing expenses incurred in preparing and mailing the prospectus and proxy statement, the fees paid to Smith Barney and in holding the meeting. Equally unavailing on the same basis is the fact that Marmon financed its purchase of Cerro stock by borrowing $68,000,000 and that Cerro-Marmon, the merger corporation, will, after the merger, contribute $25,000,000 of "Cerro’s money” to Marmon to repay that much of the loan. As long as the merger has a valid corporate purpose and the public shareholders receive a fair price for their stock this is immaterial. (See Brodsky, Corporate & Securities Litigation, NYLJ, Feb 19, 1976, p 1, col 1). Only where the merger is for *299 the sole benefit of the insiders is the use of corporate funds to purchase the stock improper.
The repeated contention by plaintiffs that this is a "freeze-out” is without merit. They are not being offered cash. They will receive a stock interest in the merged corporation, with certain benefits albeit not the so-called "residual equity” benefits of a common shareholder. This is not a freeze-out. Nor is there any evidence to support plaintiffs’ contention that they have a right to a continued public market for their stock which will be destroyed because there will be no market for the stock which they will receive. So far as appears, the evidence is to the contrary.
For all of the foregoing reasons, plaintiffs are not entitled to a preliminary injunction.
Although the decision is not so grounded, it must be noted that plaintiffs are chargeable with gross laches. The proposal and its terms were announced publicly on November 19, 1975. The proxy statement was mailed January 27, 1976. Although there was communication between plaintiffs’ counsel and Cerro, the order to show cause commencing this action was not obtained and served until February 18, 1976, returnable February 20, four days before the scheduled stockholders’ meeting called for February 24, 1976. The intolerable burden such unwarranted delay imposes on defendants and the court would in and of itself warrant denial of the injunction.
Moreover plaintiffs have failed to show that they will suffer irreparable injury if the injunction is denied. Where an injunction will do greater damage to a defendant to grant it than to a plaintiff to deny it, an injunction is unwarranted. Plaintiffs have shown no likelihood of success warranting a temporary injunction.
Accordingly, the motion for a temporary injunction is in all respects denied. In view of the time exigencies this decision is deemed the order of the court for all purposes. If the parties are so advised they may however settle an order on notice.