OPINION OF THE COURT
Beverly S. Cohen, J.
This is an action for a mandatory injunction to compel defendant Educational Testing Service (ETS) to give and permit plaintiff Emily Mindel to take the Scholastic Aptitude Test (SAT) as unscheduled testing. Plaintiff seeks this relief due to testing irregularities at the test site on May 5, 1990.
Respondent ETS is a nonprofit corporation incorporated under the Education Law of the State of New York. It is well known as the developer and administrator of tests given by the College Entrance Examination Board, including the SAT, *969 which are governed by article 7-A of the Education Law of New York State.
Plaintiff is a junior in high school who wishes to take advantage of the early decision procedures at selected colleges. Her papers indicate that to be accepted under this procedure by 4 of the 6 colleges of her choice, her verbal and math SAT scores need to be in the range of 640-680 for the verbal and 630-700 for math. Plaintiff sat for the SAT in March 1990 and scored 600 on the verbal and 620 on the math. Plaintiff at the time of submission of motion papers was not aware of her May scores but feels that "even if she did well * * * she would perform better under fair examination conditions.”
The plaintiff served an order to show cause noticed for May 31, 1990 with supporting affidavits of the plaintiff and her father. Defendant has submitted an affidavit of a person who conducted an investigation into the complaint by plaintiff, but there is no affidavit of a person at the test site on the day of the examination. The court is constrained then to accept plaintiffs statements as to what occurred on that date as true (see, 7A Weinstein-Korn-Miller, NY Civ Prac ¶ 6312.06, at 63-159). The court will consider the ETS affidavit only as it pertains to testing procedures.
The plaintiff states that on the test date, upon arrival at the test location she and some other students were separated from the remaining test takers due to problems with their registration. Shortly before test time she states that she was given her room assignment and then she had to run to the room. Plaintiff experienced difficulty in finding the room location since there were no signs giving directions. After contact with a test proctor she was directed to the proper location. Plaintiff took her seat in the second row front, had to quickly fill out her test forms and listen while the proctor read test instructions too quickly. During the test the plaintiff states that a small child entered and left the room on several occasions which created a distraction. In addition the following occurred: proctors talked frequently to each other throughout the test; the chief proctor interrupted the test shortly after it had begun to state that time remaining for the test would be announced periodically; a student sitting next to plaintiff asked multiple questions which were answered by the proctor; a proctor disturbed plaintiff’s concentration by questioning plaintiff about markings in her test booklet; a proctor took her test booklet while she was reading a portion of the English comprehension section of the test to help resolve an inquiry *970 by another student. The proctor "flipped” through the pages of the booklet then returned it to plaintiff; and a proctor once again interrupted her by attempting to comfort and calm the plaintiff.
Defendant states that it did an investigation into plaintiff’s charges and concluded that the complaints were not in any way "beyond the normal range of events occurring at test sites whenever the tests are given.” Defendant points out that despite plaintiff’s complaints she was seated for the test on time and never states she was confused by the test instructions. ETS admits there was a child at the test site but alleges the child entered and exited the room after the test began only once. Defendant asserts that proctors must on occasion talk with each other for information about problems encountered during the testing of students. Proctors also must on occasion talk with test takers and respond to their questions since questions arise as to errors in testing material, defective books and answer sheets, etc. In addition proctors must move around the room, students may leave the room for rest breaks and a supervisor may leave or enter the room on several occasions. ETS also states a proctor will ask a student about markings in the test book so as to ensure that the test takers are aware that no credit is given for such answers since only the answers on the answer sheet are graded by ETS. Defendant asserts that plaintiff’s test booklet was taken because the proctor had been advised of a defective test booklet and she investigated by looking through plaintiff’s test booklet in order to avert any greater problem that plaintiff might have upon discovering the defect. ETS claims that this interruption was minor. Lastly, ETS states that a proctor is instructed to attempt to calm a test taker since this is an act in accordance with ETS’s efforts to humanize the test administration.
Most of plaintiff’s complaints are related to surprise, discomfort and tension, and are experienced by all test takers generally to one degree or another. However, there are two undisputed facts which require the court’s attention.
First, plaintiff asserts that a child was present in the testing room after the test began on May 5. Plaintiff in her affidavit and in the supporting affidavit of two students who sat near her on that date state that the child entered and exited the room on several occasions. ETS’s own investigation reveals that a child was present at the site. The plaintiff states when in the room the child was in the front of the room near plaintiff who sat in the second row. The court is of the opinion *971 that, whether the child entered once or several times and the disturbance to plaintiff was due to such actions or acts of the child while in front of the room, such disturbance would not by itself be so direct, unique and significant to warrant an order to compel ETS to administer a new test.
Second, ETS does not dispute that plaintiff’s test booklet was taken from her during the course of the test. ETS explains that this was done to aid another student and not the plaintiff in a direct fashion. ETS states that this action was brief and intended to prevent greater problems had plaintiff been in possession of defective materials. Plaintiff says this action only prevented her from reading a passage in the English comprehension portion of the test and interrupted her concentration. The court believes that the proctor had the best of intentions and meant to deal with the situation in the least intrusive and efficient way but intentions do not bespeak results. Given the nature of this test one cannot conclude that this interruption, albeit brief in time of occurrence, was minor. Upon getting the test booklet back plaintiff had to refocus her concentration and find a new starting point for the passage she had been reading. All of this while plaintiff had to recover from any apprehension due to questions, in her mind, concerning why her booklet was taken by the proctor. Plaintiff lost valuable time which cannot be measured by the time it took the proctor to act. The Supervisor’s Manual outlines a procedure to be followed concerning defective test books (see, Supervisor’s Manual, at 21). Nothing in this procedure suggests or sanctions any act which interferes or disrupts a student not raising the question. In fact the procedure calls for dismissing the student with the defective book if an unused test book with her same form code is not available and informing that student that a makeup will be arranged by ETS.
Upon the foregoing the court concludes that the action by the proctor in taking plaintiff’s test booklet to investigate a problem of another student while plaintiff was taking the test is an irregularity in the procedures of ETS sufficient to mandate a makeup test.
ETS administers the SATs in accordance with article 7-A of the Education Law of New York. Section 343 (1) (d) requires ETS to send a "complete description of any promises or covenants that the test agency makes to the test subject with regard to * * * procedures for reviewing challenges by test subjects”. The Registration Bulletin for 1989-1990 states that *972 ETS "has the right to cancel any test scores * * * if there is a testing irregularity”. It further states "when test scores are canceled because of irregularities * * * the student is given the opportunity to take the test again, at the College Board’s expense” (see, 1989-1990 Registration Bulletin, at 9).
The issue now is whether the court can grant plaintiff a mandatory injunction compelling ETS to cancel the May 5, 1990 scores and retest the plaintiff.
The court finds that the requirements for a preliminary injunction are met in this case. Plaintiff wishes to apply for the early decision program and any inordinate delay would deny her that opportunity and the associated benefits if successful. The injury to plaintiff is the loss of the opportunity due to the passage of time and this is an irreparable harm. On the facts surrounding the test book incident the court is certain that plaintiff has a likelihood of ultimate success and a balance of the equities is in plaintiff’s favor especially since ETS in its bulletin states retesting is a part of its existing procedures. Plaintiff has therefore met the three basic requirements for a preliminary injunction. However, our inquiry does not stop here.
Courts in this State have long held that a mandatory temporary injunction may not ordinarily be granted where the effect thereof is to grant to plaintiff the same relief which may ultimately be obtained after a trial on the merits (Bachman v Harrington, 184 NY 458; Ash v Holdeman, 5 AD2d 1017). However, if the plaintiff clearly demonstrates the necessity and urgency for the relief in advance of trial, including the sustaining in the meantime of irreparable harm, the injunctive relief will be granted pending the trial (Allied-Crossroads Nuclear Corp. v Atcor, Inc., 25 AD2d 643, 644). Or, where the undisputed facts are such that a trial is a futility, such relief may be granted (Yome v Gorman, 242 NY 395, 402).
In this case ETS does not dispute the fact that the test booklet was taken from plaintiff. The court believes such action was taken with the best intentions. However, plaintiff seeks admission to the best colleges in this country. She is competing with the very best students and the early decision process allows a competitive edge to students who can qualify. Plaintiff should not under these circumstances be forced to submit test scores attained on the May 5, 1990 SAT or wait and take the test in November 1990 and thereby have her test *973 results reported so late in the process that she may miss the deadline for the early decision process. Further, given the known abilities of this student, the undisputed incident, the nature of the SAT and the potential harm to plaintiff with no corresponding detriment to defendant the court is of the opinion that a trial is not essential to decide this case.
Accordingly, the motion is granted and ETS is directed to cancel the test scores of plaintiff on the May 5, 1990 examination and schedule a new test of plaintiff as soon as practicable after service of this order with notice of entry. Plaintiff is to be given five days’ notice.
Provision of an undertaking is waived.