Anna A. Goodman, Appellee, v. Independent Order Bickur Cholem Ukadishu et al., Defendants. Independent Order Bickur Cholem Ukadishu and Abraham Bosley, Appellants.

Gen. No. 43,209.

Heard in the first division of this court for the first district at the October term, 1944. Opinion filed April 30, 1945.

Released for publication May 14, 1945.

EDWARD W. WEISS, of Chicago, for appellants.

PHILIP A. WINSTON, of Chicago, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff is the widow of Salo Auerbach, who died November 11, 1927. Defendant is incorporated for charitable and benevolent purposes under the Act of 1872 and authorized to conduct a cemetery.

May 20, 1928, plaintiff purchased from defendant a plot of land in defendant's cemetery at Waldheim, Forest Park, Cook County, Illinois, for the sum of $3,000, for which she received a warranty deed. She caused the body of her husband to be laid at rest there and in his memory caused a mausoleum to be erected at a further cost of $12,500.

The deed by which she took title while a warranty in form was subject to conditions that the conveyance

was subject to conditions stated in the by-laws. It contained no provision requiring the defendant corporation to provide care for the lot or the mausoleum. Defendant, however, had an official sexton who provided this care by private arrangement with plaintiff and other owners of lots in the cemetery.

Plaintiff became dissatisfied and apprehensive as to the care this property might receive in case of her death. She conceived the idea of selling her lot in defendant's cemetery and buying one in another which provided for perpetual care. She told the sexton of her wishes and asked him if he could find a buyer. About June 10, 1943, she purchased vault space in another cemetery. September 23, 1943, she received a permit from the Department of Public Health of Forest Park, permitting an undertaking company to remove the remains of Mr. Auerbach to the new lot. The sexton secured a purchaser for her lot and mausoleum in defendant's cemetery. His name was Samuel Best. He is of Jewish faith, and there is no objection to his character. The defendant corporation and its officers, however, denied requests by plaintiff for leave to sell the lot or to disinter the body of her husband. She employed an attorney, who met and negotiated with the attorney for the defendant corporation. October 5, 1943, the defendant's attorney wrote a letter, stating the grounds on which the requests of plaintiff to sell and disinter were denied.

Plaintiff, on November 4, 1943, filed her complaint consisting of thirty-three paragraphs, reciting at length the narrative of her transactions with defendant, as above stated, and praying defendant corporation and its officers might be enjoined from refusing permission to remove the body and from denying permission to sell to Best for the consideration of $5,000, which he offered. The complaint is verified and attached to it is the written statement, signed by Walter S. Auerbach, only child and son of Salo and

Anna Auerbach, consenting and agreeing to the removal of the remains of his father as arranged by his mother.

Defendants answered the bill, denying its equity and denying plaintiff was entitled to the relief for which she prayed.

Evidence was heard in open court. The chancellor found the equities with the plaintiff; that reasons assigned by defendants for refusal of their consent to the sale and reinterment were untenable; that while the by-laws of defendant provided an owner of a lot might not dispose of his rights without the consent of the defendant, this was a restriction which could be enforced only in proper cases and could not be unjustly and unreasonably withheld; that defendants might not arbitrarily transcend their powers to the injury of a lot owner. As to the removal of a body, the decree finds that in the absence of any provision in the charter or by-laws the rights of plaintiff must be determined upon equitable grounds not by Jewish law; that plaintiff had the right, with the consent of her son, to have the body removed to another cemetery without interference by defendants; that defendants' claim that to allow the lot of plaintiff to remain empty would have a tendency to deteriorate the cemetery had no legal foundation, because there was no provision in the deed or by-laws requiring plaintiff or any other owner to keep up their property in the cemetery or care for their lots, this being voluntary on the part of the lot owners, and other owners had neglected to care for theirs.

The decree also finds that the real and underlying reason for denying plaintiff's requests was "the fact that plaintiff refused to accede to the conditions laid down by the defendants, to-wit: that plaintiff deed the property to the defendant corporation for resale to Mr. Best who was to pay Five Thousand Dollars ($5,000.00) out of which the defendant corporation

was to retain One Thousand Dollars ($1,000.00) for its own use and benefit.'' This condition, the decree finds, was unjust, unreasonable and arbitrary, and not sanctioned by plaintiff's deed or the charter and by-laws of the corporation. The injunctions as prayed for were therefore granted against the corporation, its superintendent and Mr. Abraham Bosely, chairman of its cemetery committee, who were ordered to grant these requests. From this decree the defendants named have appealed.

Defendants contend for reversal of the decree on two grounds: first, they argue the court erred in requiring them to consent to the transfer of plaintiff's lot in the cemetery to Sam Best; secondly, that the decree errs in directing defendants to consent to the removal of the body of Salo Auerbach to another cemetery. The first contention clearly must depend upon the written contract between the parties, as expressed in the deed by which plaintiff received her rights. The instrument was dated May 20, 1928, in form a warranty deed. It was by its terms, however, subject to the by-laws of the defendant corporation then in force or which might thereafter be adopted. One of the objects of the defendant Order is by its charter stated to be to own and maintain a cemetery for the burial of its deceased members and their families. There is a board of trustees and a cemetery committee consisting of five members, including the superintendent, as chairman, and three others, whose duties are to have supervision and to act and determine all matters, complaints and disputes arising out of the cemetery. An appeal may be taken from the committee to the Order upon complaint in writing, and a two-thirds vote of members present is sufficient to reverse any finding of the committee. Any person of the Jewish faith who is not a member of the Order may purchase a lot, or if any member desires to purchase an additional lot, he shall pay for same at a

price to be agreed upon between such person and the superintendent, as approved by this committee.

Pertinent provisions of the by-laws are:

"No owner of a lot may dispose of his rights therein without the specific consent of the Order."

"This Order may own, maintain and control cemeteries to be known as the Independent Order Bickur Cholem Ukadishu cemeteries, and same shall be governed according to the rules and laws of this Order."

"A beneficiary member shall have the right to purchase the use of a cemetery lot at such price and on such terms as shall be determined by the Cemetery Committee."

"The purchase of said lot shall give the purchaser the following rights with reference thereto at such time as fifty per cent of the purchase price of his lot has been paid; he shall have the right to use his lot for the burial of himself, his wife, his parents, his wife's parents, his sons and daughters, including adopted children, his brothers and sisters."

It will be noticed the by-laws, which by reference were part of the deed, provide that the owner of a lot may not dispose of his rights without the specific consent of the Order, and the by-laws provide the relationship of the persons to the owner who are permitted burial in the cemetery. These seem to be absolute and unconditional provisions. There is no provision in the deed or in any by-law by which an owner of a lot may compel the consent of the corporation or its officers to the transfer of these rights to any other person.

The decree finds these provisions to be proper but says that consent by the corporation cannot unjustly and unreasonably be withheld, and that defendants may not act arbitrarily or transcend their powers in this respect to the injury of a lot owner. The

contract between plaintiff and the defendant corporation was voluntarily entered into. It may be true that the exaction of $1,000 from the plaintiff for permission to sell her lot to another person who is unobjectionable from any reasonable standpoint may seem arbitrary and unreasonable, but this is the contract which was voluntarily made by the parties, and we know of no case and none is cited which would give to this or any other court of equity the right to make for the parties a contract other and different from that which they made for themselves. The time for plaintiff to consult her lawyer was when she was buying not after she had bought. Whether the duties imposed upon the defendant are those of a quasi public corporation as distinguished from a strictly private one would not make any difference in this respect. The question here is not like that in *Houston Cemetery Co. v. Drew,* 13 Tex. Civ. App. 536, 36 S. W. 802, 804, cited where it was held that there was certain duties a quasi public corporation might be held to perform for lot owners. What plaintiff here desires is not the performance of a particular duty due to her under her contract but a severance and destruction of the relationship created by her contract with the corporation. The power to make reasonable rules and regulations for the management of a cemetery, as was held in *Rosehill Cemetery Co. v. Hopkinson,* 114 Ill. 209, rests upon another and a different ground. The court may in such a case restrain a corporation from acting arbitrarily or transcending its powers to the injury of a lot owner.

As to the right of plaintiff and her son to disinter and remove the body of the husband and father, defendant in its brief says:

"As to plaintiff's right to disinter the remains of her previous husband, defendant relies entirely on one proposition for its refusal to permit it, hereby waiv-

ing all its other defenses to the right of plaintiff to remove such remains. Our position on this point is that plaintiff may not make the disinterment because she threatened that if defendant refused her the permission to sell her lot, she would remove the remains and purposely permit the appearance of the lot to be so unsightly and unkempt that the value of the surrounding lots and of the cemetery would depreciate. This was pleaded by the defendant and testified to by both sides.''

There are cases holding that where anyone who has the right protests the disinterring of a human body, the permission to do so will be denied where such disinterment would seem to be contrary to the religious convictions of the deceased person who has given particular directions as to the place in which his body is to be interred. *Yome v. Gorman,* 242 N. Y. 395; *In re Weinstein,* 243 App. Div. 738, 277 N. Y. S. 425; and *Goldman v. Mollen,* 168 Va. 345, 191 S. E. 627. There are no such objectors here, and fortunately, no question of race or religion is presented. Plaintiff's husband did not select the cemetery in which his body would rest, but it lies where it is by the will and decision of the wife, who had the legal right to will and decide. She and the son (the only persons, so far as the record shows, who have any interest in this matter) agree to the removal. The corporation, which now arbitrarily desires to hold possession of his body, is very clearly not moved in the matter by a consideration of love or affection. Nor is it possible to believe that any threat by Mrs. Goodman (evidently made in anger) is the moving cause for the position defendants take. No case is cited where any such defense under such circumstances has been held available.

The decree so far as it directs defendants to consent to the transfer of the rights in the lot in question to Sam Best or any other person is reversed; in so far

as it directs the defendants to consent to the removal of the body, it will be affirmed. The cause will be remanded for proceedings in conformity with this opinion.

*Affirmed in part and reversed in part and remanded.*
NIEMEYER, P. J., and O'CONNOR, J., concur.