Meyer Friedman et al., Appellants, v. Agudath Achim North Shore Congregation, a Religious Corporation, Appellee.

Gen. No. 46,049.

Opinion

filed October 26, 1953. Released for publication December 1, 1953.

414

A. S. Frankenstein, of Chicago, for appellants; Joseph B. Gilbert, and Nathan Glick, both of Chicago, of counsel.

Samuel L. Steinberg, and Isadore Kaplan, both of Chicago, for appellee.

Mr. Presiding Justice Niemeyer delivered the opinion of the court.

The four surviving children and two sons-in-law of Sam and Fannie Friedman, deceased, appeal from a decree dismissing for want of equity their complaint praying for an injunction restraining the defendant congregation, a religious corporation, from interfering with the disinterment and removal of the bodies of Sam and Fannie Friedman, Ben Epstein, a brother of Fannie Friedman, Ben Traub, husband of Sydelle Traub, a plaintiff, and Alice Traub, sister of Ben Traub, from the cemetery of defendant—one of many cemeteries at Waldheim.

Three plaintiffs and Ben Traub, deceased, purchased adjoining lots, each suitable for six graves, in the years following: Meyer Friedman, lot 60 in 1933; Ben Traub, then living in South Bend, Indiana, lot 59 in 1946; Arthur Friedman, lot 61 in 1946; and Samuel J. Steinberg, lot 62 in 1947. Meyer and Arthur Friedman were members of the congregation at the time of their respective purchases. Each purchaser received a certificate reciting the grant to him of the use of the lot designated in his certificate "as his Family Lot; provided, however, that the said (grantee) . . . will abide by and observe the Laws, Rules and Regulations of the Congregation now in force, or that will hereafter be adopted; and further, that said Lot is, and shall remain under the supervision of said Congregation."

Rule 2 on the reverse side of the certificate restricts burial in the cemetery to members of the Jewish faith. The constitution and by-laws of the congregation at all times involved herein provided that "The basic principles of the Congregation shall be to conform to the tenets of Orthodox Judaism," and "The rules and regulations as codified in the 'Shulchan Oruch' shall be observed." Until the revision of the constitution and by-laws in 1949, the by-laws governing the cemetery provided that no transfers of bodies might be made without written permission of the president of the congregation or the chairman of the cemetery committee. This provision and others were omitted in the revision and since 1949 there has not been any express provision in the by-laws relating to the transfer or disinterment of bodies.

The persons whose bodies plaintiffs wish to disinter were, and plaintiffs are members of the Jewish faith. Ben Epstein was buried in lot 60 in 1933. Sam and Fannie Friedman were buried in that lot in 1940. Alice Traub was buried in lot 59 in 1946. Ben Traub was buried in the same lot in 1950. No other persons have been buried in the lots and there is room for 19 additional graves. During the years a family bench, tombstones and headstones were erected and the graves were cared for by a private caretaker engaged by the Friedmans. In 1950 a new bench was installed and shrubs added.

March 20, 1951 Ethel Steinberg, wife of Samuel J. Steinberg, a plaintiff, and daughter of Sam and Fannie Friedman deceased, was buried in Westlawn, a more modern and better improved cemetery in which burial is likewise restricted to members of the Jewish faith. Eight days later plaintiffs requested permission of defendant to disinter the remains of the five bodies in lots 59 and 60 because "We have members of the family

in both Waldheim and Westlawn and our lot in West-lawn is large enough to have all our relatives together, which is the wish of the family." This request was renewed June 2, 1951 and the same reason assigned. The congregation denied the application on the ground that disinterment would be contrary to and a violation of the religious laws set forth in the Shulchan Oruch.

Plaintiffs instituted this suit, basing their right to disinterment and removal upon the wish of the persons buried in Waldheim, and Ethel Steinberg, to be buried in a family lot, and the wish of plaintiffs as the closest relatives and next of kin of the deceased, with the exception of Alice Traub, that such interment be in the family lot in Westlawn. In respect to Alice Traub they allege that she is survived by one sister who joins with plaintiffs in requesting the disinterment and removal of the body of Alice Traub to Westlawn. After defendant answered, asserting with other defenses that disinterment of the bodies would be a violation of the laws, rules and regulations of the congregation by which the purchasers of the lots had agreed to abide, plaintiffs for the first time complained of conditions in Waldheim. They sought to bring themselves within the exceptions to the Jewish law prohibiting disinterment by an amendment to the complaint in which they alleged desecration of the graves by the seepage of water from the gravel road adjoining the lots after heavy rains, and by water, mud, loose stones and gravel thrown and cast upon the graves by automobiles and other vehicles using the road. The case was heard by the court, who found that the proposed disinterment was prohibited by the Shulchan Oruch and that the conditions created by the proximity of the graves to the gravel road were not sufficient to bring the case within the exceptions permitting disinterment. The complaint was dismissed for want of equity.

■ Plaintiffs' position on appeal, as stated in their brief, is "that disinterment cannot be denied where the widow and all the next of kin join in the demand, merely because it might be contrary to the tenets of the Jewish Orthodox religion and might offend the religious precepts of the congregation, it being a fact that the deceased in their lifetime were not of the Jewish Orthodox religion and were not members of the Congregation." The case cannot be reduced to this narrow issue. Disinterment is not a matter of right. *Yome v. Gorman*, 242 N. Y. 395; *Pettigrew v. Pettigrew*, 207 Pa. 313; *Goldman v. Mollen*, 168 Va. 345. As said by Mr. Justice Cardozo, speaking for the court in *Yome v. Gorman, supra* (p. 402):

"The wishes of wife and next of kin are not always supreme and final though the body is yet unburied (*Pettigrew v. Pettigrew*, 207 Penn. St. 313, 319). Still less are they supreme and final when the body has been laid at rest, and the aid of equity is invoked to disturb the quiet of the grave (*Matter of Ackermann*, 124 App. Div. 684, 685; *Weld v. Walker*, 130 Mass. 422, 424; *Pettigrew v. Pettigrew, supra; Wilson v. Read*, 74 N. H. 322, 325; *Toppin v. Moriarity*, 59 N. J. Eq. 115, 118; *Polish Nat. Church v. Soklowski*, 159 Minn. 331; *Pulsifer v. Douglass*, 94 Me. 556). There will then be 'due regard to the interests of the public, the wishes of the decedent, and the rights and feelings of those entitled to be heard by reason of relationship or association' (*Pettigrew v. Pettigrew, supra*)."

And on page 403:

"Subordinate in importance, and yet at times not wholly to be disregarded, are the sentiments and usages of the religious body which confers the right of burial. We do not interpret the terms of this certificate

418

of purchase as importing a contract between the cemetery and the owners of the plot that there shall be no disinterment at any time if forbidden by the tenets of the Church or the orders of the Bishop. How far such a contract, if made, would call for enforcement by injunction, there is no occasion to determine (*Cohen v. Congregation Shearith Israel,* 114 App. Div. 117, 189 N. Y. 528). . . . The dead are to rest where they have been laid unless reason of substance is brought forward for disturbing their repose (*Matter of Ackermann, supra; Polish N. Church v. Soklowski, supra*)."

In specially concurring MR. JUSTICE CRANE said, "I see no reason why interment may not be a matter of contract. If so, I am of the opinion that a contract was made here which prevents removal contrary to the rules of the Church." In *Cohen v. Congregation Shearith Israel* cited by MR. JUSTICE CARDOZO, the court said:

"The cemetery of defendant is maintained pursuant to the authority of the laws of this state, and, *in the absence of a regulation adopted by the defendant* as to who shall determine the right of removal, such right must be determined when presented to a court of equity, upon equitable grounds, and not by Jewish law." (Emphasis added.) . . .

"It may be that if an agreement were made with a cemetery association that remains there interred could not thereafter be disinterred, a court of equity would enforce the agreement; . . . But that is not this case. There was no agreement that the remains of Adela would not, after interment, be disinterred."

In *In re Harlam,* 57 N. Y. S. (2d) 103, the deed to the plot purchased by decedent recited that "Under no circumstances shall any corpse be disinterred or re-

419

moved," and the society's by-laws provided: "A body once interred shall not be removed, unless permission to remove or disinter such body shall first have been granted by the Society . . . ." The court said (pages 105, 106):

". . . the provisions in the deed and by-laws already referred to gave the Society the right, as a matter of contract, to determine in good faith whether to allow or refuse disinterment. *Cohen v. Congregation Shearith Israel in City of New York,* 114 App. Div. 117, 99 N. Y. S. 732, affirmed 189 N. Y. 528, 82 N. E. 1125."

The only Illinois case cited is *Goodman v. Independent Order Bickur Cholem Ukadishu,* 326 Ill. App. 25, in which the right to disinter was upheld. However, neither religious tenets nor a provision of a contract prohibiting disinterment were involved.

 The tenets of religion and the regulations of cemeteries prohibiting disinterment do not conflict with positive law or any rule of public policy. There is therefore no legal obstacle to a contract between a cemetery and a purchaser of a lot in respect to disinterment, even though the right to disinterment is to be governed by the tenets or laws of a religious body. When a dispute arises under a contract like those before us in which a purchaser obligates himself to abide by and observe the laws, rules and regulations of a cemetery and the religious body maintaining it, the court is obliged to find as a fact whether or not such laws, rules or regulations forbid disinterment. In so doing the court is not, as plaintiffs charge, substituting religious tenets and laws for the laws of the State. It is merely giving effect to a lawful agreement of the parties and determining their rights thereunder - by the standard which they have fixed for that purpose.

■ When the lots involved herein were purchased, and for some years thereafter, the by-laws of the cemetery specifically made the right of transfer of bodies subject to the consent of the president of the congregation or the chairman of the cemetery committee. The omission of this provision in the revision of the by-laws of 1949 did not lessen the power or right of the congregation to deny disinterment. The congregation remained subject to the rules and regulations of the Shulchan Oruch. The purchasers agreed to abide by and observe these rules and regulations. The court found as a fact that the Shulchan Oruch prohibited the disinterment. In many of the cases brought to our attention the same conclusion has been reached. We do not consider the finding contrary to the manifest weight of the evidence before us. Plaintiffs do not seriously contest the finding. They say in their brief: "Had the instant appeal been directed to a Rabinnical court, it could perhaps be denied on the ground advanced by the trial court, that disinterment sought by the plaintiffs would be contrary to the tenets of Shulchan Aruch."

■■ Under the contracts of purchase of the lots plaintiffs are not entitled to disinter the bodies. A court of equity will take cognizance of changes and conditions rendering further interment in the cemetery intolerable or unreasonable and grant appropriate relief. That situation is not before us. Plaintiffs are not entitled to disinterment if the contracts are disregarded. It is immaterial that the deceased in their lifetime were not of the Jewish Orthodox religion. They were of the Jewish faith. From 1933 to 1951 plaintiffs considered the family group of lots in Waldheim as a permanent burial ground for the members of their respective families. Lots were purchased from 1933 to 1947. Members of the family were buried there from 1933 to 1950.

During that period all the lots were cared for and improved. After the burial of Ethel Steinberg in Westlawn in March 1951, plaintiffs took the first steps to remove the bodies from Waldheim. As said by the trial court, the desire to have their deceased relatives in a better improved cemetery, was understandable. No other purpose appears to have prompted plaintiffs' action. It was not until after suit had been started and defendant invoked the rules of Shulchan Oruch as a bar to disinterment that plaintiffs alleged unsatisfactory conditions in Waldheim as a ground of the disinterment sought by them. This was clearly an afterthought. The trial court found against them and the finding is not against the weight of evidence. The desire, however natural, to place relatives in a better landscaped, better improved and more modern cemetery, is not a reason of substance for disturbing their repose.

The decree is affirmed.

*Affirmed.*

BURKE and FRIEND, JJ., concur.