MILDRED CLARKSON MESTJIAN, Plaintiff-Appellee, v. THE TOWN OF CERRO GORDO, Defendant-Appellee (Lynn H. Clarkson, Intervening Appellant).

Fourth District   No. 4—84—0551

Opinion filed February 27, 1985.

Hugh Finson, of Monticello, for appellant.

Rosenberg, Rosenberg, Bickes, Johnson & Richardson, Chartered, of Decatur (Wayne L. Bickes, of counsel), for appellee Mildred Clarkson Mestjian.

Glasgow Law Office, P.C., of Monticello (John W. Foltz, of counsel), for appellee Town of Cerro Gordo.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On April 13, 1983, plaintiff, Mildred Clarkson Mestjian, filed suit in the circuit court of Piatt County against defendant, the town of Cerro Gordo, seeking a declaratory judgment authorizing "the disinterment of the remains of her father [Gus Clarkson from defendant's township cemetery] and for the reburial of [the remains] beside his widow in the State of Florida." The complaint sought, as an alternative remedy, injunctive relief to prevent defendant from interfering with or refusing to permit the disinterment. Lynn Clarkson, a brother of the deceased, was permitted to intervene. Upon issues being joined, a bench trial was held. On July 23, 1984, a judgment was entered declaring that plaintiff was authorized to disinter the remains for removal to and burial in Florida. The order was stayed pending appeal. The intervenor, Lynn Clarkson, has appealed. We affirm.

The unusual events giving rise to this dispute began with the sudden death from influenza of Gus Clarkson on February 20, 1920, at the age of 32. Plaintiff was then approximately 11 years old. Her father was a tenant farmer on land owned by his father. No evidence of burial instruction by the deceased was introduced. Apparently, the deceased's mother arranged for burial in a family plot in defendant's cemetery. The widow apparently made no objection but would have had no money with which to bury the deceased elsewhere. The evidence indicated that plaintiff and the widow became somewhat estranged from the Clarkson family and moved from Piatt County within a few years. The evidence also indicated that the deceased and his widow had an agreement that if either died, the other would not remarry, and the widow did not do so.

The parties recognize the sanctity of a grave and that permission to remove buried remains will not be lightly granted. The intervenor, Lynn Clarkson, emphasizes that his brother was buried in a family plot, the place where he would likely have chosen to be buried, and that the body has remained there for nearly 65 years. He testified

that it was the strong desire of the Clarkson family for the body to remain with those of the other members of the family at Cerro Gordo.

Plaintiff testified that she purchased a four-person plot in a cemetery in Sarasota, Florida, in 1973, and that she had her mother buried there. Plaintiff also testified that it was her desire and that of her mother that the remains of the deceased be brought there and that those of plaintiff and her husband be buried there as well. The thrust of plaintiff's contentions is that the deceased should be buried with his widow and only child. The defendant township takes the proper position that the unfortunate dispute is between the plaintiff and the intervenor and that it will abide the court's decision.

The opinions in only four Illinois cases have concerned the question of the propriety of disinterment. None are directly on point.

In *Mannheimer v. Wolff* (1962), 38 Ill. App. 2d 216, 187 N.E.2d 1, the plaintiff's father was buried in a cemetery along with several other family members. According to the will of another family member buried in the plot, her grave was to be decorated in a manner different from that of other graves in the plot. The plaintiff sought to enjoin the nonuniform decorations, or, in the alternative, sought removal of that person's body from the plot. In affirming the denial of the relief requested, the court stated that the sanctity of the grave should not be disturbed, and that a court will not ordinarily order or permit disinterment unless there is a strong showing that necessity and the interests of justice require disinterment.

The case of *In re Estate of Fischer* (1954), 1 Ill. App. 2d 528, 117 N.E.2d 855, turned on the question of whether a probate court had jurisdiction to order disinterment. The appellate court held that it did not, but it nevertheless spoke to the propriety of the requested disinterment. The wife of a decedent ordered his burial in a certain cemetery. Four years later, the decedent's sister, who was named in his will as executor of his estate, requested permission to disinter the decedent's body and rebury it in the cemetery which the decedent specified in his will. The sister apparently knew of this provision at the time of the decedent's death, but the decedent's wife did not. The court discussed how the right to determine place of burial is usually vested in the widow and next of kin but that a request in the will of the deceased might control over the right of the widow or next of kin. The court noted that once a body is properly buried, a very strong showing is necessary to permit disinterment. The court then concluded that although the sister might have been able to enforce a burial in the cemetery designated in the will had she acted promptly, she had lost that right by her delay.

In *Friedman v. Agudath Achim North Shore Congregation* (1953), 351 Ill. App. 413, 115 N.E.2d 553, the relatives of the decedent, who was buried in an orthodox Jewish cemetery, sought to remove the remains to what, in their view, was a better developed and improved cemetery. The organization which ran the cemetery opposed the disinterment on the ground that disinterment was contrary to the tenets of Judaism, and the plaintiff sought an injunction prohibiting the organization from interfering with the disinterment. The appellate court held that the circuit court properly dismissed the plaintiff's complaint for want of equity. The basis for its decision was that the tenets of orthodox Judaism were incorporated into the contract for the purchase of the lot where the decedent was buried, and that the contract therefore prevented disinterment.

Finally, we consider *Goodman v. Independent Order Bickur Cholem Ukadishu* (1945), 326 Ill. App. 25, 60 N.E.2d 892. There, the widow of a decedent desired to remove the body from the cemetery of burial to a cemetery which provided for perpetual care of grave sites and to sell the lot in the former cemetery to another. Upon the refusal of the cemetery to consent to these things, she filed suit requesting that the cemetery be enjoined from interfering with the sale of the lot and with the removal of the decedent's body. The appellate court held that the trial court erred in ordering the cemetery to consent to the sale of the lots, but properly enjoined it from interfering with the disinterment of the plaintiff's husband's body. The bases for the latter decision were that there was no evidence that disinterment was contrary to the decedent's religion; the plaintiff, rather than her husband, selected the initial burial site; and the plaintiff and her son who, so far as the record showed, were the only parties interested in the matter, both assented to the disinterment.

The opinion of Justice Cardozo in *Yome v. Gorman* (1926), 242 N.Y. 395, 152 N.E. 126, is worthy of consideration. There, the New York Court of Appeals reversed a grant of a preliminary injunction restraining a cemetery association from interfering with a disinterment. The opinion spoke to the matters which the trial court should consider in passing upon the request for a permanent injunction. The opinion stressed the need for a substantial showing in order to support a disinterment but stated:

"Removal at the instance of a wife or of kinsmen near in blood to satisfy a longing that those united during life shall not be divided after death, may seem praiseworthy and decorous when removal at the instance of distant relatives or strangers would be arbitrary or cruel." 242 N.Y. 395, 403, 152 N.E. 126, 129.

The following is also of significance:

"A change of sepulture is frequently permitted to enable those who were together in life to be together in death. The courts usually will authorize disinterment so the body may be reinterred in an after-acquired family plot, particularly where the request is made by the surviving members of decedent's family, and is opposed only by the owner of the plot or the cemetery from which the body will be taken; the courts take a liberal view in permitting disinterment for such purpose." (25A C.J.S. *Dead Bodies* sec. 4(1), at 498 (1966).)

Moreover, in one of the New York cases on which the above statement is based, it is said:

"The bonds of marriage are strong and to be upheld; separation after death of those who have been joined in matrimony cannot be lightly permitted.

In the case at bar, to prevent the removal of the husband's body from one hallowed place to another hallowed place would cause, in the light of this application, a separation after death of husband and father from the rest of his family. I cannot conceive this to be right." *Application of Sherman* (1951), 107 N.Y.S.2d 905, 906, *aff'd* (1952), 110 N.Y.S.2d 224, 279 App. Div. 872, *aff'd* (1952), 304 N.Y. 745, 108 N.E.2d 613.

The case here differs from *Mannheimer*, where the requested removal was by collateral relatives and made for the sole purpose of releasing the grave space from a requirement concerning decoration. The case also differs from *In re Estate of Fischer*, where the widow's objection to disinterment was upheld. Granting disinterment there would not have brought the bodies of family members together. No contract or religious tenet is involved as in *Friedman*. As in *Goodman*, disinterment here would enable immediate family members to be buried together. The case differs from *Goodman* in that there, no family members objected while here, a brother has objected. However, we do not deem the objection of the intervenor, Lynn Clarkson, to be determinative.

The trial court made a finding that both plaintiff and her mother, the deceased widow, desired that they be buried in the same plot and side-by-side with their husbands. The finding was fully supported by the evidence. Taken together with the unusual circumstances whereby the decedent died suddenly while young, and the families became estranged, we deem the desires of plaintiff and her mother to fully justify the trial court's order. We find this situation to be just that which Justice Cardozo referred to as deserving special consideration.

We recognize the concern of the intervening brother with disturbing the repose of the remains after so many years but find it justified under the circumstances. The evidence indicated that as early as 1928, the widow expressed a desire to have the family buried in a common plot. She moved from place to place to some extent, as did her daughter. The trial court could have concluded that for many years their financial resources were very limited. Only in fairly recent years were they in a position to know where an appropriate final resting place would be. Delay on the part of plaintiff should not be held to estop her.

The decision of the trial court was fully supported by the evidence and well within any discretion it had. We affirm its judgment.

Affirmed.

McCULLOUGH and TRAPP, JJ., concur.