Lisa Michelle ALFORD and Carl Andrew Alford *v.* Eula Beatrice (Alford) HALE, Janice Ann (Alford) Richards, *et al.*

CA 03–655                                                    145 S.W.3d 389

Court of Appeals of Arkansas
Division III
Opinion delivered February 4, 2004

*Holiman & Kennedy*, by: *Kendall A.J. Sample*, for appellants.

*Meredith Wineland*, for appellees.

JOHN B. ROBBINS, Judge. The appellants in this case are Lisa Michelle Alford and Carl Andrew Alford, who are the only two children of Carl E. Alford, now deceased. The appellees are Eula Hale, Janice Richards, Connie Alford, Geneva Healey, and Alicia Meriweather. The appellees are Carl E. Alford's sisters. Carl E. Alford died on January 5, 1989, and was buried at Pinecrest Memorial Park in Alexander, Arkansas.

On October 1, 2002, the appellants filed a "petition for authority to disinter." In their petition, appellants asserted that their mother, June Alford, had died and could not be buried at the site where Carl E. Alford was currently buried. As a result, June Alford was buried at Chapel Hill Memorial Park in Jacksonville, Arkansas. The appellants petitioned the trial court to allow them to disinter their father's remains so that he could be buried beside their mother at Chapel Hill Memorial Park. The appellants alleged that they were carrying out their parents' wishes in trying to assure that their parents' final resting places were side by side.

On October 21, 2002, the trial court entered an order authorizing the appellants to have the remains of their father disinterred and moved to rest alongside their mother. The order recited, "All parties, entities, and companies, including, but not limited to, the Pinecrest Cemetery, shall allow said disinterment without inference." However, at the time the order for authority to disinter was entered, the trial court informed the appellants that they needed to serve all parties and wait thirty days before taking action on the order.

The appellees were thereafter notified of the proceedings, and on October 29, 2002, filed a motion to set aside the order authorizing disinterment. On the same day, the trial court entered an order stating that no action shall take place in the matter until a full hearing is held and pending motions can be heard by the court.

A hearing was held on February 21, 2003, and by order entered March 6, 2003, the trial court granted the appellees' motion to set aside the previous order for disinterment, and ordered that there shall not be any disinterment of Carl E. Alford. The order recites:

> The Court makes its findings specifically upon the fact that the decision of the placement of Carl Eugene Alford was made prior to his death and he participated in the decision of his burial; that the son of the decedent, Carl Andrew Alford participated in the decision of this burial, as well as the wife of the decedent, June Alford, participating and writing checks for his burial. There was no evidence that there was any discussions or decisions for Carl Eugene Alford to be buried anywhere other than Pinecrest until after the death of June Alford.

> The Court makes this finding contingent upon two other requirements. First, June Alford may be buried by Carl if the children desire. Second, the children shall decide upon the headstone for June Alford in the event they decide to move her to Pinecrest.

Lisa Michelle Alford and Carl Andrew Alford now appeal, arguing that the trial court erred in refusing to permit them to disinter their father. We agree, and we reverse.

Connie Alford testified on behalf of the appellees at the hearing. She stated that prior to Carl E. Alford's death, their father, Carl Lee Alford, had purchased four adjacent plots at Pinecrest Memorial Park. When Carl E. Alford died, he was buried in one of the plots. Connie testified that appellant Carl Andrew Alford purchased an extra plot for her below the other four spaces, because Carl E. Alford was buried in the plot intended for her. Since that time, both of Carl E. Alford's parents have died. His father is buried to the left of his plot, and his mother is buried to the left of his father's plot. The plot to the right of Carl E. Alford's plot remains vacant.

Connie testified that when Carl E. Alford was dying of cancer she and her father offered her burial place at Pinecrest. Connie further asserted that Carl Andrew Alford and June Alford

were involved in the decision to bury him at Pinecrest. Carl Andrew Alford signed the interment order authorizing his father to be buried at Pinecrest, and June Alford paid for opening the grave and a headstone.

Connie testified that her relationship with the appellants was very close up until their mother's death. She further stated that at no time prior to their mother's death did either appellant talk about moving their father. They did, however, discuss burying their mother at Pinecrest, and it was not until after her death that Connie discovered she was to be buried elsewhere.

Connie acknowledged that, at the time her brother died, she agreed with her mother, father, and older sister not to put a double marker on his grave because June was young and might have remarried. However, June did not remarry, and Connie testified that she does not object to June being buried in the plot to the right of her brother. Connie maintained that Carl E. Alford took part in the decision to be buried at Pinecrest.[1] She further stated that it is very important to her that he remain there. She stated that since his death she has consistently visited and placed flowers on his grave.

Alicia Meriweather also testified for the appellees. She stated that she visits Carl E. Alford's grave often, and that the appellants never contacted her about having June Alford buried at Pinecrest. Alicia testified that she would welcome appellants' moving their mother from Jacksonville to rest beside Carl. E. Alford at Pinecrest. Alicia further stated, "I don't ever agree with disinterring a body, ever." Another of the appellees, Geneva Healey, stated, "Carl being buried where he is had special meaning to me for just family closeness, you don't want to bother him."

Betty Finley, the owner of Pinecrest Memorial Park, testified that Pinecrest has certain rules and regulations regarding interment and ownership. She stated that Pinecrest's policy is that the property owners have to give their approval for disinterment. Ms. Finley explained that this policy did not originate from any statute or regulation, but is simply designed to prevent her business from being sued. The plot where Carl E. Alford is buried was owned by his father, Carl Lee Alford, but because Carl Lee is

---

[1] We note, however, that there is no evidence that Carl E. Alford executed a will with any provision regarding his place of burial. Nor did he execute a declaration governing the final disposition of his bodily remains as is authorized under Ark. Code Ann. § 20-17-102 (Supp. 2003).

deceased his heirs, the appellees, own the plot. Pursuant to Pinecrest's policy, no disinterment would be permitted without the appellees' approval.

Carl Andrew Alford testified for the appellants. He stated that he checked into burying his mother at Pinecrest in September 2002, about a week before she died. According to Carl Andrew, he had a telephone conversation with a Pinecrest employee, who found a note from 1989 in the file. She read the note over the telephone, and the note says:

> There are five sisters and one brother to Carl E. Alford. They are children of Carl L., who is the property owner. Siblings have spoken with father and according to Bea Hale, sister, they are in agreement that only a single marker may be purchased for Carl E. They do not wish for June to be interred in space 13. Do not sell or set a companion marker without authority of Carl L.

After hearing about the note, Carl Andrew thought the appellees did not want his mother buried at Pinecrest with their family. Therefore, he and his sister purchased plots at the cemetery in Jacksonville. Carl Andrew testified that "I want to disinter my dad so that he can be buried by my mother and us, my sister and I."

Sharon M. Leinbach, the State Registrar and Director of the Division of Vital Records for the Arkansas Department of Health, was unavailable to testify. However, she signed an affidavit that was admitted into evidence, and the affidavit states:

> I, the undersigned, do state the following under oath. That I am the State Registrar and Director of the Division of Vital Records of the Arkansas Department of Health.

> Under Arkansas Code Annotated 20-18-604(e), I, as the State Registrar, am required to issue an authorization for disinterment to a licensed funeral director, upon proper application.

> According to Regulation 7.4 of the Rules and Regulations pertaining to Vital Records promulgated under the authority of Act 1254 of 1995, I, as the State Registrar, am given the exclusive authority to issue disinterment permits.

> The attached Request to Disinter is the form that my office provides and requires when a disinterment is sought. The form

> includes all of the requirements of our office and the instructions for proceeding with the disinterment process. No other information, notices or consents are required, other than those listed on this form. Although I will honor any court order, to my knowledge, court involvement is NOT required for disinterment. I require only that a licensed funeral director submit the completed request to disinter which bears the signature of the next of kin.

The "Request to Disinter" form referred to in the above affidavit contains the following "next of kin authorization,"

> I Certify That I Am The Deceased's Authorized Family Member To Request This Disinterment.

> I Understand That Vital Records Law Recognizes A Deceased Person's Spouse, Children, Parents, Grandparents, and Grandchildren as Authorized to Receive Death Certificate Information. In The Spirit of This Law, I Have Notified These Family Members of This Disinterment.

On appeal, the appellants argue that the trial court's refusal to allow them to disinter their father was contrary to the controlling statutes and regulations of this state. The appellants cite Ark. Code Ann. § 20-18-604(e) (Repl. 2000), which provides:

> Authorization for disinterment and reinterment shall be required prior to disinterment of a dead body or fetus. The authorization shall be issued by the state registrar to a licensed funeral director, or person acting as such, upon proper application.

Arkansas Code Annotated section 20-18-202 (Repl. 2000) governs the regulatory powers of the State Board of Health and contains the provision that, "The board is authorized to adopt, amend, and repeal rules and regulations for the purpose of carrying out the provisions of this chapter." Pursuant to the above authority the "Rules of Regulations pertaining to Vital Records" were promulgated. Regulation 7.4 provides, in pertinent part:

> No dead human body shall be removed from its place of original interment except under the following conditions:

> (1) Unless a permit from the State Registrar or his designated representative marked "Disinterment Permit" be secured by a licensed funeral director in charge of the disinterment. The

qualified person making the application shall present to the State Registrar, the correct name, age, date of death of the body to be disinterred, place of disinterment, together with written consent of the next of kin or their authorized representative, by the local law enforcement officer, or by court order. The State Registrar may require legal proof of such kinship or legal authority.

The appellants correctly assert that Regulation 7.4 requires consent of the next of kin, but does not require that notice be given to other family members or the owner of the cemetery plot. The registrar requires that the form be completed by a licensed funeral director and signed by next of kin. However, the appellants submit that no Arkansas law requires a court order for disinterment of a body when there has been written consent by the next of kin. The appellants further assert that there is no requirement that the next of kin provide any reasons for their desire to disinter. Therefore, the appellants argue that the trial court was without any legal basis to interfere with their desire to have their father's remains disinterred.

■■ We agree with the appellants' argument as applied to the facts of this case. In interpreting a statute the appellate court will give the words in the statute their ordinary and common usage, and if the language is plain and unambiguous, the analysis need go no further. *Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997). The relevant statutory authority for this case gives the board of health the authority to adopt rules and regulations, and gives the state registrar the power to authorize the disinterment of a dead body. The regulations permit disinterment upon the satisfaction of certain conditions that include consent of the next of kin, but there is no requirement that the next of kin offer a compelling reason for disinterment with the application. Nor is there any statutory or regulatory provision suggesting that the next of kin's power to consent to disinterment is in any way compromised if the next of kin participated in the initial burial decision. By the plain wording of the Arkansas statutes and regulations pertaining to disinterment, the appellants, as next of kin, should not have been prevented from proceeding with disinterring their father and having him buried next to appellants' mother.

The appellees cite numerous cases that purport to justify the trial court's action in this case. In *Tully v. Tully*, 177 S.E.2d 49 (Ga. 1970), the Georgia Supreme Court announced that while the right

to have a dead body remain undisturbed is not absolute, a court will not ordinarily order or permit it to be disinterred unless there is a strong showing that it is necessary and that the interests of justice require it. In *Fidelity Union Trust Co. v. Heller*, 84 A.2d 485 (N.J. Super. 1951), it was held that "after interment a body is in the custody of the law and removal is subject to the jurisdiction of a court of equity, but the power should not be exercised unless it be clearly shown that good cause and urgent necessity for such action exists." In *Mestjian v. Town of Cerro Gordo*, 475 N.E.2d 287 (Ill. App. 4th 1985), it was stated that in light of the sanctity of a grave, permission to remove buried remains will not be lightly granted.

While appellees have identified caselaw from foreign jurisdictions in attempt to support their position, these cases are unavailing. This is because none of them address the same, or similar, statutory or regulatory provisions that we are bound to follow in deciding this case.

However, there are cases from other states that support the arguments of the appellants. In *Dueitt v. Dueitt*, 802 S.W.2d 859 (Tex. App. 1991), it was held that because the applicable disinterment statute provides that a surviving spouse may agree with the cemetery association to remove a decedent's remains without obtaining a court order, there is no need to prove a necessity or compelling reason for disinterment. In that case, the appellate court stated that when the legislature enacts a statute that provides a clear and distinct right, it must be presumed the legislative enactment established the public policy of the state with respect thereto. Similarly, in *In re Elman*, 578 N.Y.S.2d 95 (1991), it was held that there is no need for application to a court for disinterment if all of the required statutory consents of the relatives are obtained, and that application is necessary only if the required consents cannot be obtained.

There is one case cited by the appellees where the appeals court upheld the denial of the surviving spouse's petition to disinter the remains of his ex-wife, notwithstanding a statute that provided him the right to do so. *See Spanich v. Reichelderfer*, 628 N.E.2d 102 (Ohio App. 1993). However, in that case the petitioner had been separated from his wife and had a tenuous relationship with her prior to her death. The facts were so strong that the trial court found he was not even a "surviving spouse" under the meaning of the statute, and the appeals court used its equitable powers to prevent abuse of the statute. That case is clearly distinguishable from the case at bar, in that there is no

evidence in the instant case to suggest anything but a normal relationship between the appellants and their father. Under the facts presented, we cannot say there has been any abuse of the regulation governing disinterment.

 We hold that the trial court erred in ruling that there shall be no disinterment of the remains of Carl E. Alford. We, therefore, reverse the trial court's order entered March 6, 2003.

Reversed.

BAKER and ROAF, JJ., agree.