ROBERT J. GLADWIN, Judge
Our issue is whether the Sebastian County Circuit Court erred in denying a petition for exhumation. We hold that it erred, and we reverse and remand this matter to the circuit court to enter an order allowing exhumation.
On July 27, 2017, Shannon and Bobby Faulkner were killed in an airplane crash; Bobby was piloting the plane.[1] Appellants Debbie and Jim Welch, Shannon's parents, agreed with appellee Cynthia Faulkner, Bobby's mother and administratrix of his estate, to allow Shannon to be buried next to Cynthia's parents in Old Jenny Lind Cemetery, on the condition they (Jim and Debbie) could be buried next to Shannon.
*449 It was Bobby's desire to be cremated and to have no funeral service. Cynthia did have him cremated, but a joint funeral service was also held for Shannon and Bobby, and his cremains were placed within Shannon's casket.
The relationship between the Welches and Cynthia thereafter quickly became acrimonious. While Cynthia agreed to convey two plots to the Welches to accommodate their request to be buried next to Shannon, the conveyance did not occur in a timely manner.[2] Also, preliminary reports indicated the crash was due to pilot error, and the Welches then pursued and resolved a wrongful-death claim against Bobby's estate. The parties filed counterpetitions against one another in the circuit court disputing property ownership in both estates. Additionally, Cynthia, without consulting the Welches, placed a footstone on the grave that read "Fly High," and the Welches strongly disapproved because of the manner in which Shannon and Bobby had died.
In March 2018, the Welches filed a petition in the circuit court requesting permission to exhume Shannon's body and reinter her remains at a burial site with greater accompanying burial plots. The petition noted Bobby's cremains were in Shannon's casket, and it expressed their desire to have his cremains reinterred in the same burial location at which his cremains were currently placed. Cynthia opposed exhumation because Shannon's body and Bobby's cremains were buried together by mutual agreement, and she believed Shannon and Bobby would have wanted to be buried together. However, Cynthia requested in her response to the petition to exhume that if the circuit court determined the Welches' request should be granted, she be given at least three days' advance notice of the date and time of exhumation so she or a representative could be present to ensure that Bobby's ashes were removed from the casket and placed within a container to be replaced in the existing gravesite.
At the hearing, Debbie testified that Shannon did not have a written declaration regarding her final disposition; it was family knowledge that the entire the family wished to be buried together; and she and Jim had purchased six burial plots close to their home to accommodate those wishes.[3] She stated she and Jim would pay all disinterment expenses and the expense to reinter Bobby's ashes. She explained that even if Cynthia deeded the burial plots in Old Jenny Lind Cemetery to them, they would still want to move Shannon because there was such animosity between the families that the Welches did not visit the cemetery for fear of encountering Cynthia. Debbie acknowledged Shannon and Bobby had a loving relationship, and she and Jim had agreed to bury them together. She stated she would not agree they would have wanted to be buried together, this being a decision made by her, Jim, and Cynthia in a distressing and vulnerable time.
Jim testified that when he and Debbie agreed for Shannon and Bobby to be buried together, they had everyone's interests at heart, but events did not occur as intended. He was particularly disturbed by the "Fly High" footstone Cynthia placed at the gravesite. He reiterated the hostile feelings that had arisen between the two *450 families. The testimony of Valerie Jacoby, Shannon's sister, was similar to her parents' testimony.
Cynthia testified that while Bobby has a fourteen-year-old son, Joshua, from a previous relationship, Bobby and Shannon did not have any children together, and Shannon did not have any children from previous relationships. Cynthia testified she and the Welches mutually agreed to a joint funeral and for Bobby's cremains to be placed in Shannon's casket. According to Cynthia, there was discussion about her transferring two adjacent burial sites to the Welches, but she claimed Debbie asked for more than two plots. She testified she had executed a deed to transfer two plots and was still willing to provide two plots, but not four. Cynthia objected to the grave's being disturbed after almost a year and wanted the court to honor the agreement between her and the Welches. She acknowledged she had not carried out Bobby's final wishes; rather, she had made different arrangements due to the manner in which Bobby and Shannon died. She also admitted she did not consult with the Welches before placing the footstone, recalling it did not cross her mind the footstone might be offensive, as it referred to flying high with God and had nothing to do with airplanes.
Joshua, Bobby's minor son, testified his father and Shannon loved each other very much. It was his desire to keep his father and Shannon together so he could visit both of them, and in his opinion, they would want to be together.
Debbie, recalled as a witness, denied she had asked for more than two burial plots. She stated she had never been notified Cynthia had conveyed the two plots and was just learning of the conveyance at the hearing.
The circuit court, acknowledging the matter to be a sad and regrettable situation that was probably irreconcilable at this point, denied the Welches' petition for exhumation. In its order, the circuit court found the following: children and parents were involved in the situation; the court did not believe Bobby had any intent to cause the accident; by mutual agreement, Bobby's cremains were placed in Shannon's casket and the two were buried together; Bobby's child did not want the gravesite disturbed; although the desires of the deceased were not known for certain, the families agreed to bury the two together; Cynthia had recently executed a deed to transfer two plots next to Shannon to the Welches; the petition for exhumation was not filed until months after the burial; and the reason the Welches wanted to disinter Shannon was to place her in a larger burial-plot site so the family could be buried together, but there was at least one family member "buried in Michigan or Minnesota." The circuit court cited strong public policy against disinterment and found it was "obligated to deny their request for reinterment." The Welches now appeal that decision.
I. Standard of Review
The appellate courts use a de novo standard of review when deciding the question of the correct application and interpretation of an Arkansas statute because it is a question of law. Roberts v. Holiday Island Suburban Improvement Dist. # 1 , 2018 Ark. App. 394, 559 S.W.3d 269.
II. Discussion
Arkansas Code Annotated section 20-18-604(e) (Repl. 2014) provides that prior to disinterment of a dead body, and upon proper application, the state registrar shall issue authorization for disinterment and reinterment. The Arkansas State Board of Health is responsible for adopting, *451 amending, and repealing rules and regulations for public health. Ark. Code Ann. § 20-18-202 (Repl. 2014); Tozer v. Warden , 101 Ark. App. 396, 278 S.W.3d 134 (2008). Regulation 7.4 of the Regulations for Administration of Vital Records provides that for a dead human body to be removed from its place of original interment, a licensed funeral director in charge of disinterment shall obtain a "Disinterment Permit" from the State Registrar or his representative. 007-12-007 Ark. Code R. § 7.4 (Lexis Nexis 2018). In addition to other required information, the next of kin or their authorized representative must give written consent for the disinterment. Arkansas Code Annotated section 20-17-102(d) (Repl. 2014), which concerns the final disposition of a dead body, provides in pertinent part:
(d)(1) The right to control the disposition of the remains of a deceased person, the location, manner, and conditions of disposition, and arrangements for funeral goods and services to be provided vests in the following in the order named if the person is eighteen (18) years of age or older and is of sound mind:
(A) First, if the decedent died while serving in any branch of the armed forces of the United States, the National Guard, or a reserve component of the armed forces, the decisions regarding the final disposition for the decedent shall be made by the person authorized to direct disposition on the DD Form 93 completed by the decedent prior to death;
(B) Second, a person appointed by the decedent in the decedent's declaration of final disposition executed before his or her death, in accordance with this section;
(C) Third, the surviving spouse;
(D) Fourth, the sole surviving child of the decedent or if there is more than one (1) child of the decedent, the majority of the surviving children;
(E)(i) Fifth, the surviving parent or parents of the decedent;
(ii) If one (1) of the surviving parents is absent, the remaining parent shall be vested with the rights and duties of this section after reasonable efforts have been unsuccessful in locating the absent surviving parent;
(F) Sixth, the surviving brother or sister of the decedent or if there is more than one (1) sibling of the decedent, the majority of the surviving siblings;
In Alford v. Hale , 85 Ark. App. 23, 29, 145 S.W.3d 389, 393-94 (2004) (citations omitted), our court held:
In interpreting a statute the appellate court will give the words in the statute their ordinary and common usage, and if the language is plain and unambiguous, the analysis need go no further. The relevant statutory authority for this case gives the board of health the authority to adopt rules and regulations and gives the state registrar the power to authorize the disinterment of a dead body. The regulations permit disinterment upon the satisfaction of certain conditions that include consent of the next of kin, but there is no requirement that the next of kin offer a compelling reason for disinterment with the application. Nor is there any statutory or regulatory provision suggesting that the next of kin's power to consent to disinterment is in any way compromised if the next of kin participated in the initial burial decision.
In Alford , our court held that the decedent's children, as next of kin, should not *452 have been prevented from disinterring their father so that he could be buried next to their mother, as the plain wording of the Arkansas statutes and regulations pertaining to disinterment, allow the next of kin to make that decision.
This case is before us because Bobby's cremains are buried with Shannon's body; the Welches desire to disinter Shannon's body and therefore necessarily Bobby's cremains; and Cynthia does not want the two disinterred. Cynthia is not arguing on appeal that as Bobby's mother and next of kin, she has the right to control the disposition of his remains. Her argument is that the Welches made a final disposition when they initially agreed to bury Shannon and do not have an unlimited right of transfer. We do not agree. As in Alford , supra , the Welches, as Shannon's next of kin, are not prevented from disinterring her and burying her in the family plot, as the plain wording of the statute and regulations pertaining to disinterment allow the next of kin to make that decision.
The circuit court, at the behest of both parties, spent a great deal of time on the factors enumerated in Tozer v. Warden , 101 Ark. App. 396, 278 S.W.3d 134 (2008). In Tozer , the decedent's parents were divorced, and while they were both next of kin, the mother wanted to disinter her daughter, but the father opposed the request. The circuit court denied the petition to disinter. Our court reversed and remanded the case, holding that if parties of the same degree of consanguinity disagreed, the issue must be submitted for judicial decision; we adopted seven factors to be considered in making a determination in that event. They are not applicable here. The Welches, as Shannon's next of kin, are in complete agreement-they want Shannon disinterred and reburied in a cemetery where their family can be buried together. Cynthia, Shannon's mother-in-law, has no say in Shannon's disinterment. Likewise, Shannon's stepson, Joshua, has no say in the matter; he is not Shannon's child, and he had not yet attained majority, a requirement of Arkansas Code Annotated section 20-17-102(d)(1).
Regulation 7.4(3)(b) of the Regulations for Administration of Vital Records provides that "[t]he casket in which a disinterred body is contained shall not be opened at any time, except by court order, or under instructions of the medical examiner or coroner of the county of death." 007-12-007 Ark. Code R. § 7.4 (3)(6). In reversing and remanding for entry of an order granting the Welches' petition for exhumation, we recognize Shannon's casket will necessarily have to be opened to remove Bobby's cremains. Therefore, pursuant to the regulation, the circuit court's order shall also include a directive allowing the casket to be opened to remove Bobby's cremains. Reversed and remanded for entry of an order consistent with this opinion.
Reversed and remanded.
Gruber, C.J., and Virden, J., agree.

Shannon and Bobby had been married for five years at the time of their deaths.

Cynthia testified she had signed a deed conveying two burial plots to the Welches prior to the hearing on the petition to exhume Shannon's body, but the Welches testified they had not been provided such a deed.

This plan included moving the body of the Welches' son, who had died at age nineteen from leukemia and was currently buried in Michigan.